**Ross M. COATES, Appellant (Defendant),**

v.

**Don Owen KAUFMAN and Jennifer Kay Kaufman, Appellees (Plaintiffs).**

No. 90-29.

Supreme Court of Wyoming.

Oct. 21, 1991.

Thomas M. Hogan, Casper, for appellant.

Lawrence E. Middaugh, Casper, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

We resolve a contention for this case that contract ambiguity was ignored by the district court in favor of its holding the parties to the four corners of an unambiguous agreement. Appellant, Ross M. Coates, purchased property located at the Pathfinder Lake Marina, Alcova, Wyoming, from appellees, Don Owen Kaufman and Jennifer Kay Kaufman (Kaufman). Coates defaulted in his payments to Kaufman, and Kaufman sought specific performance of the contract. During the course of the litigation, the parties entered into a release and settlement of sorts which extinguished the original contract. The district court found, insofar as the issues presented to it were concerned, the release and settlement was unambiguous and, as a result, the district court decreed that neither party could pursue any claim against the other arising out of the original contract leaving Kaufman entitled to the property possession.

We affirm.

Coates presents two issues for our consideration:

(1) Did the trial court err in granting the Plaintiffs/Appellees [Kaufmans] possession of all of the property which they had sold to the Defendant/Appellant [Coates]?

or in the alternative,

(2) If the Plaintiffs/Appellees are entitled to possession of all the property sold to the Defendant/Appellant, is the Defendant/Appellant entitled to a recovery of all monies paid to the Plaintiffs/Appellees for the property?

In response, Kaufman contends:

Does the appellant meet the requisite burden of proof to support a reversal or

modification of the Trial Court's Judgment?

The parties entered into a contract on March 1, 1986, in which Kaufman sold to Coates[1] real and personal property located at the Pathfinder Lake Marina at Alcova, Wyoming. When Coates failed to pay the balance due on the purchase price of the property, Kaufman sought to recover those monies. Kaufman initiated suit by complaint filed on January 18, 1988, seeking specific performance. Coates answered, generally denying the allegations of the complaint and counterclaiming that he had been induced to enter into the contract by fraudulent representations made by Kaufman concerning the financial condition of the Marina. The basic terms of the original contract were: a purchase price of $115,000; Coates paid $35,000 as a down payment; and, Coates was to pay Kaufman $10,542.25 on September 15, 1986, and nine successive annual payments of $12,686.47. In the event of default, the contract gave Kaufman the option of seeking specific performance, as he chose to do, or initiating foreclosure proceedings. The parties agree that Coates made a $10,000 payment on the property in 1986, in addition to the $35,000 down payment.

In April 1988, as a means of trying to resolve their dispute, Kaufman and Coates entered into a second agreement entitled, "MUTUAL RELEASE OF CLAIMS BASED ON CONTRACT." Neither party contests the existence or efficacy of that agreement in this appeal and, indeed, Coates relies upon it in formulating his argument. That agreement provided:

This mutual release, executed on April __, 1988, between Don O. Kaufman and Jennifer K. Kaufman of 5017 Alcova Route, Box 81, Casper, Wyoming, hereinafter referred to as Sellers, and Ross M. Coates of 5017 Alcova Route, Box 39, Casper, Wyoming, and Candace Coates of (address) Casper, Wyoming, hereinafter referred to as Buyers, is intended to effect the extinguishment of obligations as herein designated.

Disputes and differences have arisen between Sellers and Buyers with respect to that certain agreement in writing entered into between the parties on March 1, 1986, which agreement presently is made a part of this release and incorporated by reference. A copy of the agreement is attached to this mutual release in order that all such claims, demands, actions, responsibilities, and liabilities of the respective parties may be ascertained. The parties have agreed to execute this mutual release in settlement of such disputes and differences.

In consideration of the mutual relinquishment of their respective legal rights with reference to the above-mentioned disputes and differences, in consideration of the execution of this mutual release, in consideration of Paul E. Steffey having taken over Buyers' debt under the above-referenced agreement, and in consideration of Buyers having granted Sellers a security interest in their personal property to secure the payment of the debt now owed the Sellers by Paul E. Steffey, each party for himself/herself and his/her heirs and legal representatives, expressly releases the other, and the heirs and legal representatives of the other from all liability for claims and demands arising out of the agreement as above described. The parties mutually agree that the agreement shall be and is hereby rescinded, terminated, and cancelled as of _____, 1987.

This release includes, but is not limited to, all claims, counterclaims, and actions based on a breach of such contract as set forth and alleged in a complaint filed in the action entitled *DON OWEN KAUFMAN and JENNIFER KAY KAUFMAN, Plaintiffs, vs. ROSS M. COATES AND CANDACE COATES, Defendants,* Civil Action No. 62954 in the District Court for the Seventh Judicial District in and for Natrona County, Wyoming, which complaint and counterclaim are

---

1. Originally, both Ross M. Coates and his wife, Candace Coates, were parties to this action. However, during its pendency they were divorced and Ross Coates was awarded any interest in the Marina as his sole property.

hereby incorporated by reference into this release for greater certainty.

This release shall forever settle, adjust, and discharge all claims of Sellers against Buyers and all claims of Buyers against Sellers, and the above designated case shall be dismissed with prejudice, each party to pay his/her own costs.

As noted, the blanks were not filled in and there are other obvious deficiencies in this agreement. Also, other documents attached to the release set out above included a draft of an agreement which provided that Paul Steffey was to pay $18,000 on behalf of Coates, apparently on the balance Coates owed on a loan he negotiated in order to make his down payment on the Marina property, as well as a promissory note from Steffey to Coates in an amount that is left blank. The apparent purpose of these documents was to permit Steffey to purchase the Marina property from Coates with Kaufman's blessing. Steffey did not execute either of these documents, but he did run the Marina during the 1988 season under what he described as an oral agreement which essentially parallelled the unexecuted, written agreement. There are also a number of other documents which were produced as a part of the Mutual Release of Claims Based on Contract, including those which would have memorialized Kaufman's participation in facilitating the sale to Steffey, but for the most part these documents were not executed. Also, the stipulation to dismiss this civil suit as part of the consideration for the overall release and settlement agreement was not executed. Neither party seriously contests that the gist of the release agreement was carried forward on an oral basis. Steffey did assume responsibility for running the Marina during 1988, but eventually he simply departed, leaving Coates and Kaufman to again settle their differences.

The district court determined the parties had effectuated the Mutual Release of Claims Based on Contract and that Coates had no further claims against Kaufman, and Kaufman had no further claims against Coates. The district court also found Kaufman was entitled to possession of the property which he had sold to Coates. Coates appealed that order and designated as the record on appeal only the court file. He did not order a transcript, asserting that none was necessary.

■ This is not a case like *Hayes v. Production Credit Ass'n of the Midlands*, 813 P.2d 1302 (Wyo.1991), where we held that a compromise and settlement had the effect of extinguishing a prior judgment. However, there is this important similarity: here the district court found that the Mutual Release of Claims Based on Contract was entered into by the parties, and that it had the effect of extinguishing the original real estate sales contract. We cannot question the district court's determination in this regard because, in the absence of a transcript of the evidence heard by the district court, we must presume the evidence supports that conclusion. *Matter of Wyoming Game and Fish Com'n*, 773 P.2d 941 (Wyo.1989); *Charter Thrift and Loan v. Cooke*, 766 P.2d 522 (Wyo.1988); *Wyoming State Treasurer ex rel. Workmen's Compensation Dept. v. Schultz*, 444 P.2d 313 (Wyo.1968). Assuming as we must that the release was agreed to, we then must look first to it for the resolution of the issues presented by Coates.

■ The Mutual Release of Claims Based on Contract is unambiguous in extinguishing the original agreement between the parties. It is also unambiguous in its statement that all claims that could have been made by either party against the other under that contract are released. There may be ambiguities in other portions of the agreement, particularly in light of the failure of the Steffey stewardship of the Marina to come to fruition, but those ambiguities can have no affect on the matters at issue here. *See Svalina v. Split Rock Land and Cattle Co.*, 816 P.2d 878 (Wyo. 1991). The question of construction absent material ambiguities is one of law and for the court to determine. *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595 (Wyo.1989); *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781 (Wyo.1989); *Bosler v. Coble*, 14 Wyo. 423, 84 P. 895 (1906). The obvious and unavoidable conclusion is, and we so hold, that

Coates could no longer claim that he was owed money by Kaufman for whatever interest he had in the Marina property (based either upon the $35,000 down payment[2] and the additional $10,000 payment,[3] or his claim of fraud), and Kaufman could no longer claim Coates was required to pay the remaining balance of $80,000 plus interest. Of necessity, possession of the property then reverted to Kaufman.

The judgment of the district court is affirmed.

---

2. That down payment was obtained by a loan secured by the purchaser for which Coates gave a security interest in the tangible personal property assets to the lender, United Savings Bank of Wyoming. Whatever remains of that indebtedness, originally in the amount of $35,000, now undoubtedly continues to be some character of a lien on the property upon reacquisition by Kaufman. In particular, if the liquor license is included, the security interest cloud may well require settlement with the lender or its likely successor in interest for the loan, Federal Deposit Insurance Corporation/Resolution Trust Corporation. Coates never paid $45,000 unless he has, since litigation, satisfied United Savings Bank's $35,000 loan since pledged assets were sale property. In colloquial terms, this was a bootstrapped purchase where the down payment was borrowed upon the security of purchased assets. In effect, the seller finances for the buyer the down payment that he receives.

3. Coates seeks recovery of all monies he paid to Kaufman, but makes no offer to account for or recompense Kaufman for the period when Kaufman did not have possession of the property. Although Coates comes to this court with what amounts to an equitable argument, he is unsuccessful because he has failed to offer equity in return. He who seeks equity must do equity. *Harney v. Montgomery,* 29 Wyo. 362, 381, 213 P. 378 (1923). Moreover, Kaufman got the property back, but apparently with some rather serious clouds on the title as a result of actions taken by Coates while he was in possession.

Finally, we note that had Kaufman pursued his alternative remedy of foreclosure, as permitted under the original contract, the result would likely have been the same, i.e., under the foreclosure provision, Kaufman could retain the down payment as well as any additional payments in the event of a default by Coates.