The **PRUDENTIAL PREFERRED PROP-ERTIES, a Wyoming corporation, Appellant (Plaintiff),**

v.

**J AND J VENTURES, INC., an Idaho corporation; and James E. Miller, Appellees (Defendants).**

No. 93–1.

Supreme Court of Wyoming.

Sept. 21, 1993.

**1268**

Paul J. Drew of Drew & Carlson, Gillette, for appellant.

James L. Edwards of Stevens, Edwards & Hallock, Gillette, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

A failed attempt to sell Wyoming ranch property resulted in this controversy. As the payee of a promissory note in default, a listing broker sued the maker, who was also the corporate purchaser of the property, and an individual guarantor to collect the unpaid principal and interest. The broker also sued the sellers of the ranch to collect the equivalent of unpaid commission fees under provisions of a listing contract that entitled the broker to a share of a forfeited earnest money deposit from an executory contract to sell real estate. Through summary judgment, the district court denied all claims.

Our analysis, differing from that of the district court, discloses that in attempting to create the promissory note, the broker failed to provide consideration in return for the promise to pay. Therefore, we hold that the promissory note was invalid and the broker cannot recover against either the maker or the guarantor. The promissory note was apparently intended as security for the purchaser's earnest money in the executory contract. However, this motive was never realized. No consideration flowed from the broker, as the payee of the promissory note, to the sellers. As a result, the earnest money deposit, which was necessary to create the executory contract between the sellers and the purchaser, was never received. The invalid executory contract prevents the broker from recovering against the sellers.

With these modifications, we affirm the decision to deny all claims by the broker. Ambiguity in the final order of the district court requires a remand to issue an order in conformity with this decision. On remand, we order the district court to reconsider the taxation of reasonable attorney's fees and costs in light of our decision.

## I. ISSUES

Appellant, The Prudential Preferred Properties of Gillette, Wyoming, the listing

broker of the failed sale (hereinafter Prudential, broker or payee), presents a single issue:

> Whether the liquidated damages provision of the subject real estate purchase contract, which allows the sellers to retain a defaulting buyer's earnest money, is unenforceable as a matter of law.

Appellees, J and J Ventures, Inc., the maker of the promissory note and purchaser of the real estate (hereinafter J and J, maker or purchaser), and James E. Miller, the guarantor of the promissory note (hereinafter Miller or guarantor), characterize the issue on appeal differently:

> Was Summary Judgment properly granted by the District Court in favor of appellees?

Appellees, Larry Pabst and Connie Pabst, the sellers of the real estate (hereinafter sellers), did not participate in this appeal, but reserved a right to request further relief on remand. The person who transfers real property by sale is commonly referred to as the "vendor." However, the relevant documents at issue in this case use the term "seller" or variants. We shall preserve that usage in specific references to the parties to this action since authorities acknowledge it as being proper. Black's Law Dictionary 1360 (6th ed. 1990).

## II. FACTS

A chronology of events involved in this controversy offers the best opportunity for understanding and analysis. Several agreements create the relevant relationships between the parties. While the documents are styled in various forms, each is a simple contract between the parties.

On October 9, 1990, the sellers executed a listing contract with the broker. This contract granted a right to sell the Pabst Ranch, located fifty miles north of Gillette in Campbell County, Wyoming, for a listing price of $750,000.00 to be paid in cash or by a new loan. The broker agreed "to accept deposits" made in conjunction with the sale of the property. For these services, the sellers agreed to pay five percent of the selling price to the broker as a commission.

The parties provided another means of payment for the broker in the listing contract. "In the event of forfeiture of payments made by a prospective purchaser, the sums received shall be divided between the broker and the [sellers], 50% thereof to said broker, but not to exceed the commission agreed upon herein, and the balance to the [sellers]." As part of an incorporation clause, the parties agreed that no verbal agreements modified any of the terms or conditions of the listing contract. The term of the listing contract was extended through January 9, 1992.

On October 18, 1991, J and J, as maker, and Miller, as guarantor, executed a promissory note with the broker, as payee. The promissory note provided:

> **For value received,** J And J Ventures, Inc., an Idaho Corporation, hereinafter called Maker, promises to pay to the order of The Prudential Preferred Properties, hereinafter called Payee, the sum of $150,000.00, together with interest at the rate of 10% per annum.
>
> The amount due herein shall be paid as follows:
>
> Entire balance due October 25, 1991[.]
>
> If suit is brought to collect this note, the Payee shall be entitled to collect all costs and expenses of the suit, including reasonable attorney's fees not less than 10% of the indebtedness remaining. Any requirement for presentment of notice of dishonor, demand, and protest are hereby waived by Maker and any guarantor. Any extension of time of payment on allowance of partial payment shall not constitute a waiver of any of Payee's rights under this note.
>
> J. and J. Ventures, Inc.
>
> By: [*Signature*]
>
> James E. Miller, Secretary
>
> **For value received,** each of the undersigned unconditionally guarantee payment of this instrument and waive any requirement of demand, protest and notices of payment. All questions of diligence on the part of Payee are also waived and extensions may be granted without giving notice to the undersigned.

*[Signature]*

James E. Miller

(Emphasis added.)

On October 18, 1991, J and J, as purchaser, also formalized an executory contract with the sellers. The "Offer, Acceptance and Receipt Specific Performance Contract (Farm & Ranch & Vacant Land)" detailed various responsibilities of the parties. The purchaser offered to buy the ranch for $750,000.00 payable as $150,000.00 "earnest money deposit" and $600,000.00 "cash or certified funds at closing." The sellers accepted the offer.

According to the language of the executory contract, the broker accepted the earnest money deposit "as a fiduciary for Seller and/or Purchaser" and agreed to "retain such deposit in its trust account." On the signature page, the broker acknowledged receipt of "the earnest money deposit on the 18 day of October, 1991 at 5:00 o'clock P.M." under the signature of an agent. On page one, the broker acknowledged receipt of "($150,000.00) One Hundred Fifty Thousand Dollars from Purchaser in the form of Promissory Note."

The parties agreed to a closing date of November 15, 1991. If the purchaser defaulted, the executory contract provided, in pertinent part:

> In the event of default by the Purchaser, and if Seller elects to treat this Contract as terminated, then all payments made hereunder shall be paid to Seller as liquidated damages, such amount being agreed by the parties hereto to constitute compensation for the loss of opportunity suffered by the Seller due to such breach.

The sellers reserved the right to continue to offer the property for sale until closing. If another offer was accepted, the sellers acknowledged that a breach of contract might occur.

The sellers and the broker did have negotiations underway with other potential interested parties. A limited partnership extended an offer to buy on October 14, 1991 promising to pay $825,000.00 during the period of an option contract. This offer was secured by an earnest money deposit of $40,000.00. On October 25, 1991, the offer was modified to a "backup" offer, in the event that the sale to J and J was not completed. As part of the modification, the limited partnership's earnest money payment was reduced to $30,000.00 cash which was already on deposit in the broker's trust account.

On October, 29, 1991, the broker sent a default notice to Miller making a demand on J and J, as maker, and Miller, as guarantor, to pay the principal and interest owed on the promissory note. It is undisputed that no payments were made prior to the notice or subsequent to the notice.

On November 6, 1991, the sellers made a counter-offer to the limited partnership. The counter-offer amended the option period to five years from six, and moved a payment date. The limited partnership accepted the counter-offer as a "backup" by November 12, 1991.

On November 15, 1991, the closing date for the executory contract, the purchaser defaulted on that agreement. Apparently, the purchaser did not have sufficient cash to complete the transaction. On the same day, the sellers accepted the "backup" offer and sold the ranch to the limited partnership under terms of the option contract.

On December 4, 1991, the broker filed this action seeking to collect from the maker and the guarantor the unpaid principal and interest on the promissory note. On January 29, 1992, the broker filed an amended complaint adding a cause of action against the sellers for the equivalent of the unpaid commission fees after termination occurred on the executory contract. The broker claimed the fees were due under provisions of the listing contract permitting the broker to share in any forfeited earnest money deposit.

The maker and the guarantor answered that the broker had not been damaged by the default on the note and that any amounts claimed under the termination clause of the executory contract amounted to an impermissible forfeiture or penalty. The sellers also denied the broker suffered

any damage as a result of the termination of the executory contract since the property was sold to the limited partnership on the same day for a higher price and with potentially larger commission fees. The sellers claimed, as affirmative defenses, that the broker was barred from asserting its claims due to a failure of consideration and a breach of fiduciary duties.

Ruling on cross-motions for partial summary judgment, the district court granted the motion of the maker and the guarantor and denied the motion of the broker. The district court found that the terms of the promissory note were unambiguous, but the broker was denied recovery. Considering the broker to be an agent of the sellers, the district court concluded, as matter of law, that the termination provisions of the executory contract constituted an unenforceable penalty. In addition, the district court decided that the sellers had waived any rights to recover unpaid earnest money. In the district court's decision letter, the district judge determined there were no remaining claims upon which relief could be granted and said the complaint should be dismissed against "all parties" with prejudice. Each party was to bear its own attorney's fees and costs.

### III. DISCUSSION

In evaluating the propriety of a summary judgment, we determine whether there is no genuine issue of material fact and whether the prevailing party is entitled to judgment as a matter of law. *Equality Bank of Evansville, Wyo. v. Suomi,* 836 P.2d 325, 328 (Wyo.1992); W.R.C.P. 56(c). Summary judgment is appropriate when the terms of the parties' agreement do not raise issues of material fact and the district court must interpret the language of an unambiguous contract. *J & M Investments v. Davis,* 726 P.2d 96, 98 (Wyo.1986). This court accords no deference to the district court's decisions on issues of law. *Coones v. F.D.I.C.,* 848 P.2d 783, 795 (Wyo. 1993) (*quoting Powder River Oil Co. v. Powder River Petroleum Corp.,* 830 P.2d 403, 406–07 (Wyo.1992)).

Ascertaining whether a contract is ambiguous is a question of law for the reviewing court. *Ferguson v. Reed,* 822 P.2d 1287, 1289 (Wyo.1991); *Coates v. Kaufman,* 818 P.2d 1141, 1143 (Wyo.1991). When the provisions are clear and unambiguous, the examination is confined to the "four corners" of the document to construe the intent of the parties. *Holst v. Guynn,* 696 P.2d 632, 634 (Wyo.1985). Extrinsic evidence is not admitted to contradict the plain meaning of an unambiguous contract. *Ferguson,* 822 P.2d at 1289. Without a valid reason for variance, the intent of the parties stated in their agreement must be given effect. *Wyoming Bd. of Certified Public Accountants v. Christensen,* 800 P.2d 853, 856 (Wyo.1990).

We agree with the district court's finding that the language of the promissory note is unambiguous. The language is plain and the parties to it are specifically stated. Furthermore, we find the language of the listing contract and of the executory contract for sale of real estate to be unambiguous. Therefore, each document before the court represents an integrated contract requiring the court to construe the parties' intent from the terms of that particular agreement. *Coates,* 818 P.2d at 1143.

Fundamental to permitting enforcement of the terms of the agreement is a finding that the individual contract is valid. It is at this point that our analysis departs from that of the district court. We will focus first on the validity of the promissory note and then turn our attention to the validity of the executory contract.

It has long been recognized that a promissory note is a species of contract subject to the ordinary requirements of contract law. *J & M Investments,* 726 P.2d at 98 (holding promissory note was enforceable because it was supported by separate consideration and did not result in unjust enrichment); *B–T Ltd. v. Blakeman,* 705 P.2d 307, 315 (Wyo.1985) (discussing need for every promise to answer for the debt of another to be memorialized as a note or memorandum in writing); 10 C.J.S. *Bills*

*and Notes* § 143 at 599 n. 88 (1938 & Cum.Supp.1993) (collecting cases requiring consideration for promissory notes to be valid). "As between the maker and the payee, a promissory note is but a simple contract to pay money. * * * It may be defended against for want of consideration, for fraud and deceit, and for any of the other causes which will avoid simple contracts." *Vancouver Nat. Bank v. Katz,* 142 Wash. 306, 252 P. 934, 937 (1927). The Uniform Commercial Code preserves the defenses for failure of consideration. Wyo.Stat. § 34.1–3–303(b) (1991). *See also* Wyo.Stat. § 34.1–3–305(a)(ii) (1991).

 The basic elements of a contract require an offer, acceptance and consideration. *Miller v. Miller,* 664 P.2d 39, 40 (Wyo.1983). The party seeking to recover on the contract carries the burden of proving the contract. *Id.* Part of this burden is proving consideration. *Transamerica Commercial Finance Corp. v. Naef,* 842 P.2d 539, 542 (Wyo.1992) (*quoting Moorcroft State Bank v. Morel,* 701 P.2d 1159, 1161 (Wyo.1985)). "Lack of consideration goes to the validity of contract formation. Absent some indicia of actual consideration, a contract will be held invalid by the courts." *Miller,* 664 P.2d at 41.

This court furnished a recitation of various definitions of consideration in *Moorcroft State Bank,* 701 P.2d at 1161–62. Restatement (Second) of Contracts § 71 (1981) provides a succinct statement:

(1) To constitute consideration, a performance or a return promise must be bargained for.

(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

(3) The performance may consist of

(a) an act other than a promise, or

(b) a forbearance, or

(c) the creation, modification, or destruction of a legal relation.

(4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person.

Ultimately, in testing to determine if consideration is present, the court is asking: "What did you give to get what you got?"

The seminal case in Wyoming refusing to enforce a contract for debt because of a failure of consideration is *Miller,* 664 P.2d at 43. In a complex series of transactions between members of the same family, a variety of obligations were created. One of them was a promissory note signed by the mother as maker. The note was evidence of a $60,000.00 debt owed to a Wyoming bank. The executor of the mother's estate claimed that one son had obligated himself to pay the promissory note. This court determined that evidence of the son's motive in offering to pay the promissory note was not a substitute for the necessary element of consideration. *Id.* at 41.

Similarly, this court held in *Transamerica Commercial Finance Corp.,* 842 P.2d at 542, that the wife of a maker of a promissory note could not be held liable as a guarantor, because separate consideration did not support her promise to pay made after the original transaction creating the obligation. The court applied a rule first announced in *Moorcroft State Bank,* 701 P.2d at 1161 that a naked promise to pay is not sufficient. In *Moorcroft State Bank,* the court determined that no consideration was provided for a guarantee given after a promissory note was signed. "The bank did not give up anything nor promise anything." *Id.* at 1162.

 When we examine what indicia of actual consideration the broker, as payee, provided to the maker or to the guarantor for the promissory note, we find none. The promissory note contains a bare recitation that the promise to pay was, "[f]or value received * * *." However, no consideration flowed from the broker to the maker or to the guarantor. It is undisputed, for example, that the broker did not give $150,-000.00 to the maker or the guarantor. The maker's and guarantor's motives in promising to pay cannot substitute for the broker's failure to provide consideration for the promissory note. *Miller,* 664 P.2d at

41; 3 Richard A. Lord, *Williston on Contracts,* § 7:17 (4th ed. 1992). There was no performance or return promise from the broker to the maker or guarantor sufficient to constitute consideration for the promissory note. Restatement (Second) Contracts, *supra,* § 71.

We recognize that the performance or return promise from the broker does not have to be directed only to the maker. Restatement (Second) Contracts, *supra,* § 71. Consideration for a promissory note may flow to a third party. *Barrett v. Mahnken,* 6 Wyo. 541, 545, 48 P. 202, 203 (1897). *See also Houghton v. Thompson,* 57 Wyo. 196, 115 P.2d 654, 658 (1941). The Restatement summarizes the flow of consideration to a third party in a transaction involving a promissory note. "A makes a promissory note payable to B in return for a payment by B to C. The payment is consideration for the note." Restatement (Second) of Contracts, *supra,* § 71 cmt. e.

Applying the Restatement formula, *Unruh v. Nevada Nat. Bank,* 88 Nev. 427, 498 P.2d 1349 (1972) provides an example of consideration going to a third party. The Unruhs executed a $10,000.00 promissory note with a Nevada bank, but the Unruhs did not receive any money. Instead, the bank issued a cashier's check for $10,000.00 to a railroad to purchase treasury stocks. The Unruhs were mailed a copy of the receipt for the check. The court held that the consideration for the promissory note had flowed to a third party and the note was valid. *Id.* at 1350. *See also Godchaux Sugars, Inc. v. Fink,* 188 Miss. 531, 195 So. 318, 319 (1940) (holding a promissory note is not binding unless consideration flows to the maker or the third party). The consideration in *Barrett* was not money, but a written release signed by a scorned fiancee releasing her former suitor from his promise to marry her. The fiancee was the payee of two promissory notes given by two of the suitor's relatives. This court held that consideration for the promissory notes had flowed to the suitor and the notes were valid. *Barrett,* 6 Wyo. at 545, 48 P. at 203.

It is undisputed that the broker did not deposit $150,000.00 in the sellers' trust account on behalf of J and J to serve as earnest money in the executory contract. The broker did not provide any performance or return promise to any third party sufficient to constitute consideration in return for the maker's and guarantor's promises to pay. *Unruh,* 498 P.2d at 1350; Restatement (Second) of Contracts, *supra,* § 71 cmt. e.

■ The fact that the promissory note and the executory contract were formalized contemporaneously does not establish consideration for the promissory note. In *Houghton,* 115 P.2d at 657, this court weighed whether additional consideration for an oil and gas lease could be found in other writings arguably from the same transaction. Justice Kimball wrote that the consideration recited in the single document at issue controlled:

> It is argued that the four writings prepared July 24, 1926, were parts of a "single deal," and authorities are cited in support of the rule that all writings forming part of the same transaction are interpreted together. * * * We may concede that the four writings were parts of the same transaction within the mentioned rule of interpretation, but we cannot see that that is important on the question under discussion. The part of the transaction that led to the making of the Bryner lease and the conditional promise to convey the 2% interest is the subject of a separate contract evidenced by a separate writing which by its terms shows that intention of the parties that the promise on the one side to make the lease was set off as the agreed exchange for the conditional promise on the other side. The other writings contain nothing to show a different intention.

*Id.* at 657–58.

The rule in *Houghton* is dispositive. While the broker acknowledged in the executory contract receipt of "$150,000.00 One Hundred Fifty Thousand Dollars from Purchaser in the form of Promissory Note," this general language cannot be read in such a manner as to impart consideration

for the promissory note from the sellers' promise to sell in the executory contract. *Green River Valley Foundation, Inc. v. Foster*, 78 Wash.2d 245, 473 P.2d 844, 846 (1970) (holding that a promissory note and earnest money agreement would be read together only when each of them made specific reference to the other). The promissory note signed by J and J and Miller is a separate writing without any reference to the executory contract. The terms of the promissory note disclose a bargain in which a promise to pay was given by the maker and the guarantor in return "[f]or value received * * * " from the broker. The specific agreed exchange between the broker, the maker and the guarantor did not occur. The broker provided no value to the maker or the guarantor.

Another reason the promissory note and executory contract must be considered separate agreements is that the parties to the agreements differ. *See Daily v. Warren*, 16 Wash.App. 726, 558 P.2d 1374, 1378 (1977) (enforcing a forfeiture provision of an executory contract which specifically incorporated a partial earnest money deposit in the form of a promissory note given to the vendor as payee). The sellers are not identified as parties to the promissory note. The broker, while identified as a fiduciary, is not a party to the executory contract. The guarantor, as an individual, is not a party to the executory contract. The only party common to both agreements is J and J as the maker of the promissory note and the purchaser in the executory contract.

While the district court did not specifically address whether consideration was present in the creation of the promissory note, the district court found the broker, as payee, to be the agent of the sellers by resorting to parol evidence. While it is true that the listing contract made the broker an agent for certain purposes, including accepting earnest money deposits, the unambiguous language of the listing contract prevented oral modifications. In addition, the fact of that agency as the broker cannot overcome the unambiguous language of the promissory note. *Ferguson*, 822 P.2d at 1289. Restatement (Second) of Agency § 323 (1958) provides that whatever the understanding of the parties, the language of an integrated contract controls:

(1) If it appears unambiguously in an integrated contract that the agent is a party or is not a party, extrinsic evidence is not admissible to show a contrary intent, except for the purpose of reforming the contract.

Since the promissory note lacks words of negotiability, Wyo.Stat. § 34.1-3-104(a) (1991), we do not consider it necessary to determine if this promissory note is a negotiable instrument. It is, for our present purposes, sufficient that the promissory note is merely a contract between the parties for payment of a debt. *Rubbelke v. Strecker*, 53 Wash.App. 20, 765 P.2d 314, 315 (1988). However, Restatement (Second) of Agency, *supra*, § 324 requires, in pertinent part:

(1) In the absence of reformation, an agent signing a negotiable instrument in his own name is a party to it although the fact of agency appears upon it, unless the name of the principal also appears.

The Uniform Commercial Code includes a similar provision requiring the representative's signature to show unambiguously that it is made on behalf of a represented person who is specifically identified in the instrument. Wyo.Stat. 34.1-3-402(b)(i) (1991). *See also* 1 James J. White & Robert S. Summers, *Uniform Commercial Code*, § 13-5 (3rd ed. 1988). In *Mid-America Real Estate & Inv. Corp. v. Lund*, 353 N.W.2d 286, 289 (N.D.1984), the court applied the Uniform Commercial Code formulation and said that "[w]here the instrument neither names the principal nor indicates representative capacity, however, there is no ambiguity regarding the signature and extrinsic evidence is inadmissible under [the U.C.C. provision]."

The unambiguous language of the promissory note names the broker as payee. There is no reference to the broker acting in a representative capacity for the sellers. The sellers are not named in the promissory note as principals. Therefore, either as

an integrated contract or a negotiable instrument, extrinsic evidence is not admissible to show other intent.

We hold that the promissory note is invalid due to a failure to provide consideration. No consideration flowed from the broker directly to the maker or the guarantor. No consideration flowed to the sellers, as third parties. The broker simply gave nothing and did nothing in return for the promise to pay.

■ The evident motive for the promissory note was to provide security for the purchaser's earnest money in the executory contract. The executory contract does not define the terms "earnest money" or "earnest money deposit." Therefore, this court gives effect to the words in accord with the meaning that would be conveyed to reasonable persons at the time and place of their use. *Wangler v. Federer*, 714 P.2d 1209, 1213 (Wyo.1986).

■ Earnest money is commonly defined as a comparatively small amount of *money* made as a deposit of partial payment on the purchase of property for a sale to be consummated at some time in the future. *Stewart v. Robertson*, 490 So.2d 13, 14 (Ala.Civ.App.1986); *Mortenson v. Financial Growth Inc.*, 23 Utah 2d 54, 456 P.2d 181, 184 (1969). The earnest money deposit demonstrates that the purchaser is in earnest and good faith acting with the understanding that if the purchaser fails to purchase the property, the deposit will be forfeited. *Bishop Ryan High School v. Lindberg*, 370 N.W.2d 726, 728 (N.D.1985). In its usual and ordinary meaning, "money" means coins and paper currency and does not embrace notes, bonds, evidences of debt or other personal or real estate. Black's Law Dictionary, *supra*, at 1005. *See Kortz v. American Nat. Bank of Cheyenne*, 590 P.2d 1338, 1340 (Wyo.1979).

In effect, an earnest money deposit operates as liquidated damages. *McMurry Oil Co. v. Deucalion Research, Inc.*, 842 P.2d 584, 587 (Wyo.1992) (holding that the retention of an earnest money deposit was the only damage claimable by vendor when purchaser refused to close). However, the parties may agree that earnest money will be refunded in some circumstances. *Holst*, 696 P.2d at 634 (holding that the purchaser was entitled to return of the earnest money deposit according to contract language that expressly provided for refund if unable to qualify for financing). In a unique factual situation, this court has refused to enforce an earnest money deposit forfeiture provision when the purchaser defaulted on an executory contract, but the vendor waived a right to claim liquidated damages and failed to prove that any damage had been suffered. *Walker v. Graham*, 706 P.2d 278, 282 (Wyo.1985).

■ The good faith and earnest effort showing supposedly represented by an earnest money deposit could not have occurred in this transaction. Since no consideration flowed from the broker to the sellers in return for the promissory note, there was no earnest money deposit. The language of the contract required the broker, as a fiduciary, to acknowledge receipt of the earnest money deposit as a part of the offer. While the broker acknowledged receipt of the deposit, the undisputed evidence is that there was no money, under the usual definition of the term, on deposit in the broker's trust account. Without the deposit, there could not have been an offer and acceptance. No valid executory contract for the sale of real estate was formed by the parties.

The broker sought to recover the equivalent of unpaid commission fees from the seller. The listing agreement entitled the broker to those fees in the event of "forfeiture of payments made by a prospective purchaser * * *." Forfeiture would have occurred under terms of the executory contract following a default by the purchaser and termination by the sellers. However, since the parties failed to enter into a valid executory contract, the broker is not entitled to any commission from this transaction. *Goetz v. Anderson*, 274 N.W.2d 175, 182 n. 1 (N.D.1978); *Ferguson Realtors v. Butts*, 37 Ohio App.3d 30, 523 N.E.2d 534, 538–39 (1987). The simple reality is that since the broker did not provide consideration for the promissory note to flow to the

sellers, there is no earnest money deposit to forfeit and be shared with the broker.

In its decision letter, the district court directed that the motion for summary judgment by J and J and Miller should be granted and that the motion for summary judgment made by Prudential should be denied. The district court then stated that "plaintiff's complaint as to all parties should be dismissed with prejudice, each party to bear its own costs and attorney's fees." The final order of the district court, however, does not specifically refer to any disposition of the cause of action against the sellers. On remand, we direct the district court to correct this ambiguity and to reconsider the issue of reasonable costs and attorney's fees in light of this opinion.

## IV. CONCLUSION

Consideration remains fundamental to the creation of a valid contract. In this instance, the failure to provide consideration for the promissory note resulted in an invalid promissory note and the failure to create a valid executory contract. "Nothing is agreed until all is agreed." It may be a maxim, but it is an apt description of what happened when only paper exchanged hands in this attempt to sell a ranch.

We affirm, as modified, and remand.