2003 WY 139

**DOUBLE EAGLE PETROLEUM & MINING CORPORATION, a Wyoming corporation; and Wind River Resources, Inc., a Wyoming Corporation, Appellants (Plaintiffs),**

v.

**QUESTAR EXPLORATION & PRODUCTION COMPANY, a Texas corporation; Wexpro Company, a Utah corporation; Lance Oil & Gas Company, Inc., a Delaware corporation; and Ultra Resources, Inc., a Wyoming corporation, Appellees (Defendants).**

No. 02–265.

Supreme Court of Wyoming.

Oct. 30, 2003.

Representing Appellant: Mark W. Gifford and Craig, Newman, Casper, WY.

Representing Appellee: Mr. Thomas Reese of Brown, Drew & Massey, LLP, Casper, WY for Questar Exploration & Production Co. & Wexpro Co.; Mr. R. Michael Mullikin of Mullikin, Larson & Swift, Jackson, WY and Gary C. Davenport of McGloin, Davenport, Severson & Snow, Denver, CO for Lance Oil & Gas Co.; and Mr. Gerald Mason of Mason & Mason, P.C., Pinedale, WY and George W. Mueller of Burns, Wall, Smith & Mueller, P.C., Denver, CO for Ultra Resources.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and BROOKS, D.J.

LEHMAN, Justice.

[¶ 1] At issue in this case is the meaning and effect of two assignments of federal oil and gas leases. The assignments both carved out and reserved a 3.125 percent overriding royalty interest in the leases. At trial, the district court found that the assignments were ambiguous and, therefore, considered extrinsic evidence of the parties' intent when entering into the assignments. Ultimately, the district court found that the parties intended the 3.125 percent overriding royalty interest in the leases to be proportionately reduced to reflect that at the time the assignments were made the assignor was the owner of a 20 percent working interest in the leases. Thus, only a .625 percent overriding royalty interest in the leases was effectively assigned. We affirm.

## *ISSUES*

[¶ 2] Appellants, Double Eagle Petroleum & Mining Corporation and Wind River Resources, Inc., set forth the following issues:

1. Is there any ambiguity in written assignments of oil and gas leases that reserve to the assignor a "3–1/8% of 8/8ths" overriding royalty interest?

2. Under the doctrine of merger, was it error for the trial court to use a collateral agreement to structure an ambiguity in the written assignments?

3. Did the trial court err when it utilized expert testimony to structure an ambiguity in the written assignments?

4. Did the trial court err when it gleaned the parties' intent from documents generated years after the written assignments?

5. Did the trial court err when, in the absence of any claim under the Wyoming Recording Act, it found that Appellants had notice of title problems regarding the overriding royalty interests at issue?

## *FACTS AND HISTORICAL BACKGROUND*

[¶ 3] Prior to 1978, Hondo Oil and Gas Company (Hondo) became the owner of a 20 percent carried working interest in the subject oil and gas leases. In 1978, Hondo and El Paso Natural Gas Company (El Paso) entered into an agreement which in part conveyed the involved leases but reserved to Hondo certain overriding royalty interests. Pursuant to the 1978 agreement, Hondo provided separate assignments for each lease at issue. These assignments on Bureau of Land Management forms state that Hondo, "as owner of 20 percent of record title" in each lease, "hereby transfers and assigns" to El Paso its interests in the leases, reserving to Hondo an overriding royalty of "3 1/8% of 8/8ths."

[¶ 4] In 1980, a Unit Agreement for the development and operation of the Mesa Unit, which encompasses the lands described in the leases, was executed naming Mountain Fuel Supply Company (Mountain Fuel) as operator. Mountain Fuel then changed its name to Wexpro Company (Wexpro). Hondo was then merged into its parent company, Atlantic Richfield Company (ARCO). In 1991, Double Eagle Petroleum & Mining Corporation (Double Eagle) acquired an assignment from ARCO of its interest in the leases. In 1997, Double Eagle conveyed one-half of its interest in the leases to Wind River Resources, Inc. (Wind River).[1]

[¶ 5] A dispute then arose between appellants and Wexpro as to the amount of overriding royalty interest in the leases held by appellants, which resulted in the instant litigation being filed. Upon trial concerning solely those claims involving declaratory relief, the district court ruled that appellants' overriding royalty interest in the leases was proportionally reduced to .625 percent by the 20 percent interest out of which it was created. This appeal followed.

## *STANDARD OF REVIEW*

[¶ 6] After trial, the district court issued specific findings of fact and conclusions of law. In *Ahearn v. Hollon*, 2002 WY 125, ¶ 15, 53 P.3d 87, ¶ 15 (Wyo.2002) (quoting *Hutchings v. Krachun*, 2002 WY 98, ¶ 10, 49

---

1. Questar Exploration & Production Company is the lessee burdened by appellants' overriding royalty interests, while Lance Oil & Gas Company, Inc. and Ultra Resources, Inc. hold interests in the involved lands.

P.3d 176, ¶ 10 (Wyo.2002)), this court reiterated our applicable standard of review:

The purpose of specific findings of fact is to inform the appellate court of the underlying facts supporting the trial court's conclusions of law and disposition of the issues. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993). While the findings of fact made by a trial court are presumptively correct, we examine all of the properly admissible evidence in the record. Because this court does not weigh the evidence de novo, findings may not be set aside because we would have reached a different result. Rather, the appellant has the burden of persuading the appellate court that the finding is erroneous. *Id.* See also *Maycock v. Maycock*, 2001 WY 103, ¶ 11, 33 P.3d 1114, ¶ 11 (Wyo.2001). Findings of fact are not set aside unless inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. The definitive test of when a finding of fact is clearly erroneous is when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A determination that a finding is against the great weight of the evidence means that a finding will be set aside even if supported by substantial evidence. *Id.* See also *Mathis v. Wendling*, 962 P.2d 160, 163 (Wyo.1998). Conclusions of law made by the trial court are not binding on this court and are reviewed de novo. *Maycock*, ¶ 12.

[¶ 7] We have also stated:

In contract litigation, when the terms of the agreement are unambiguous, the interpretation is a question of law.... *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686, 689 (Wyo.1996); *Union Pacific Resources Co. v. Texaco, Inc.*, 882 P.2d 212, 218–19 (Wyo.1994). Whether a contract is ambiguous is a question of law for the reviewing court. *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1271 (Wyo. 1993). We review questions of law *de novo* without affording deference to the decision of the district court. *Hermreck v. United Parcel Service, Inc.*, 938 P.2d 863, 866 (Wyo.1997); *Griess v. Office of the Atty. Gen., Div. of Criminal Investigation*, 932 P.2d 734, 736 (Wyo.1997).

According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.*, 882 P.2d at 220; *Prudential Preferred Properties*, 859 P.2d at 1271. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo.1996); *Prudential Preferred Properties*, 859 P.2d at 1271.

*Amoco Prod. Co. v. EM Nominee Partnership Co.*, 2 P.3d 534, 540 (Wyo.2000).

[¶ 8] We add this supplementation of that standard of review:

Our primary focus in construing or interpreting a contract is to determine the parties' intent, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. If the language of the contract is clear and unambiguous, then we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the contract. Common sense and good faith are leading precepts of contract construction, and the interpretation and construction of contracts is a matter of law for the courts. *Reed*, ¶ 10, 18 P.3d 1161. We have also recognized that the language of a contract is to be construed within the context in which it was written, and the court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made. *Polo Ranch Company v. City of Cheyenne*, 969 P.2d 132, 136 (Wyo.1998).

*Williams Gas Processing—Wamsutter Company v. Union Pacific Resources Company,* 2001 WY 57, ¶ 12, 25 P.3d 1064, ¶ 12 (Wyo.2001); *also see Boley v. Greenough,* 2001 WY 47, ¶ 11, 22 P.3d 854, ¶ 11 (Wyo.2001) ("In interpreting unambiguous contracts involving mineral interests, we have consistently looked to surrounding circumstances, facts showing the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract."); and *Newman v. RAG Wyoming Land Company,* 2002 WY 132, ¶¶ 11–12, 53 P.3d 540, ¶¶ 11–12 (Wyo. 2002).

However, if the meaning of a contract is ambiguous or not apparent, it may be necessary to use evidence in addition to the contract itself in order to determine the intention of the parties. In such instances, interpretation of the contract becomes a mixed question of law and fact. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994); *Alexander v. Phillips Oil Company,* 707 P.2d 1385, 1387 (Wyo.1985):

> If the contract is ambiguous, the intent of the parties may be determined by resort to extrinsic evidence. *Rouse,* 658 P.2d at 78; *Mountain Fuel Supply Co. v. Central Engineering & Equipment Co.,* 611 P.2d 863 (Wyo.1980). An ambiguous contract is one "which is obscure in its meaning because of indefiniteness of expression or because of a double meaning being present." *Farr,* 746 P.2d at 433. See also *Bulis,* 565 P.2d at 490. The existence of ambiguity is a question of law. *Hensley v. Williams,* 726 P.2d 90 (Wyo.1986); *Amoco Production Co.,* 612 P.2d at 465.

*True Oil Company v. Sinclair Oil Corporation,* 771 P.2d 781, 790 (Wyo.1989). *Wadi Petroleum, Inc. v. Ultra Resources, Inc.,* 2003 WY 41, ¶¶ 11–12, 65 P.3d 703, ¶¶ 11–12 (Wyo.2003).

### DISCUSSION

[¶ 9] The crux of appellants' argument is that the district court erroneously concluded that the two subject assignments of federal gas leases were ambiguous and then improp-erly utilized extrinsic evidence to determine the intent of the parties in interpreting those assignments. Specifically, appellants assert: 1) the assignments are clear and unambiguous, making it unnecessary to resort to extrinsic evidence in interpreting them, 2) under the doctrine of merger, it was error to use a collateral agreement to structure an ambiguity in the assignments, 3) utilizing expert testimony to structure an ambiguity in the assignments was improper, 4) gleaning the parties' intent from documents generated years after the assignments was incorrect, and 5) in the absence of any claim under the Wyoming Recording Act, it was inappropriate to find that appellants had notice of title problems regarding the overriding royalty interests at issue.

[¶ 10] Both the factual and legal issues presented to this court in the case of *Wadi Petroleum,* 2003 WY 41, 65 P.3d 703, are similar to this case. In *Wadi,* Wadi purchased the same disputed overriding royalty interests in two of the same six oil and gas leases at issue in this case. In addition, the assignments in this case are the same assignments involved in *Wadi* involving the same leases and lands. In *Wadi,* this court held that the district court was correct, as a matter of law, in determining that the disputed assignments were ambiguous and that, because the assignments were ambiguous, the district court properly examined extrinsic evidence in order to resolve the ambiguity.

[¶ 11] In rendering that holding, this court said at ¶¶ 13–14 (emphasis added):

> In his treatise on oil and gas law, Richard Hemingway includes this discussion which is especially apropos to the issue we must resolve in this case:
>
> **(A) Definition of Fraction**
> As in the case of all interests carved out of the lessee's interest, care must be used in defining the fraction or quantum interest. Pure Oil Co. assigns to A an overriding royalty of 1/16. Consider the following statements of interest:
> (a) 1/16 out of the lessee's 7/8 interest;
> (b) 1/16 out of 7/8;
> (c) 1/16 out of 7/8 working interest;
> (d) 1/16 out of 7/8 leasehold.

In each instance the statement of the interest is ambiguous. In all four cases the interest is susceptible of two constructions: (1) that the interest is a full 1/16 interest (or 8/128) and is merely payable out of the lessee's interest; or (2) that the quantum of the interest is of the lessee's interest under the lease, and not of full production, i.e., $1/16 \times 7/8 = 7/128$. In both (c) and (d), an additional interpretation may be made that the interest is equal to $1/16 \times 7/8 \times 7/8 = 49/1008$. This is due to the fact that the terms "working interest" and "leasehold estate" have a common meaning as the right to 7/8 of production. Since the fraction 7/8 and the particular phrase both appear in the clause it might be assumed by some that both be given effect. Therefore, it is necessary that the draftsman define the fraction precisely. If it is the intent that a full 1/16 interest be created the clause should read, "1/16 of 8/8 of production," or "1/16 of gross production." If the lesser interest, the phrase may read, "1/16 of 7/8 of 8/8 of production," or "1/16 of 7/8 of gross production."

An additional problem will occur where the lease from which the non-cost-bearing interest is created does not cover the full interest in the minerals. In the above illustration assume that the lease of Pure Oil Company covers only a one-half interest in the minerals. Two constructional problems occur. The first is whether the proportionate reduction clause in the lease applies to reduce the overriding royalty or production payment in proportion to the interest under lease. However, by the lease terms the proportionate reduction clause applies only to interests created under the lease.

The second problem is just the converse of the first. Where the non-cost-bearing interest is created under the ½ interest lease of Pure above, will it be automatically reduced in amount, due to the drafting of the assignment? It is the normal practice to tie the non-cost-bearing interest to the lease from which it is created. In the above illustration Pure drafts the following clause:

"... an overriding royalty of 1/16 of 7/8 of 8/8 of all of the oil, gas and other minerals *produced and saved under and by virtue of said lease.*"

Query: As the lease covers only half of the minerals, does the non-cost-bearing interest refer only to the half mineral interest under the lease? Under some authority it would seem that the answer is yes, and that the overriding royalty interest created is only a 1/32.

To protect against either undesired result a clause should be inserted into the instrument providing that the non-cost-bearing interest will or will not be reduced, regardless of the interest under lease. Also a further provision may be inserted to deal with the effect of failure of title to the lease interest:

"Although it is believed that the net mineral interest in the said lease owned by the Assignor amounts to not less than a 0.875000 working interest, if by reason of failure of title in whole or in part, or for any other reason, the net mineral leasehold interest actually acquired by Assignor in said lease should be less than the interests hereinbefore set forth, then the overriding royalty interest herein assigned to Assignee shall not be reduced in amount as hereinabove set forth."

Where it is desired that the overriding royalty be reduced the phrase may be changed to read, "then the overriding royalty interest herein assigned to Assignee shall bear its proportionate part of such loss and shall be reduced proportionately." Where a partial interest lease is assigned and it is desired that the interest not be reduced due to title loss, recitations in the above clause should be changed appropriately. [Footnote omitted.]

Richard W. Hemingway, *Law of Oil and Gas,* § 9.9(A), at 635–637 (3rd ed.1991); *also see* 2 Howard R. Williams, Charles J. Meyers, *Oil and Gas Law,* § 411.1(c) and (d), at 308–13 (*see* esp. p. 312, "The assignment instrument may and should expressly provide for or against proportionate reduc-

tion.") (2002); 4 Howard R. Williams, Charles J. Meyers, *Oil and Gas Law,* § 686.2, at 432–457 (*see* esp. p. 447, "It would be preferable under such circumstances to treat the instrument as ambiguous and to admit parol evidence to assist the fact finder in resolving this ambiguity [where proportionate reduction clause is lacking].").

Relying on this authority, we hold that the district court correctly concluded that the reservations of the overriding royalty interests were ambiguous due to a lack of clarity and incompleteness of expression. Therefore, we need not directly respond to this argument. *Because the assignments did not make that point clear, they were ambiguous and it was necessary for the district court to consider extrinsic evidence, which properly included the opinions of experts in oil and gas law, in order to resolve the ambiguity which arose on the face of the assignments. The ambiguity was not structured by those opinions. They were merely used by the district court in resolving the pre-existing ambiguity.* This readily distinguishes this case from *Amoco Production v. EM Nominee Partnership,* 2 P.3d 534, 541 (Wyo.2000) wherein we held:

Nothing in the language of Article 11 of the Unit Agreement addresses the repayment of leasehold royalties previously paid. Its plain language is concerned only with the potential of retroactive adjustment of royalties for production that had occurred prior to the effective date of the revision of the participating area. Amoco's endeavor to invoke the testimony of experts with respect to industry custom and practice in applying this language inverts our rule with respect to extrinsic evidence. Instead of relying upon the extrinsic evidence to resolve an ambiguity, Amoco seeks to invoke the extrinsic evidence to structure an ambiguity. This would amount to this Court writing a new contract for the parties, and we are foreclosed from that endeavor. *Union Pacific Resources Co.,* 882 P.2d at 220; *Prudential Preferred Properties,* 859 P.2d at 1271.

*In the instant case the ambiguity is inherent in the assignments, and the extrinsic evidence is used only to assist the trial court in resolving the ambiguity.*

Accordingly, relying on this same analysis, it was appropriate for the district court in this case to conclude that the assignments were ambiguous and that the utilization of extrinsic evidence including expert testimony was necessary to interpret the intent of the parties when entering into the assignments.

[¶ 12] This court further addressed the same merger issue asserted by appellants in this case in *Wadi,* at ¶ 15 (emphasis added), stating:

In this argument, Wadi asserts that Ultra and Questar promote a theory that the original assignments "imply" proportionate reduction, and that the silence of the 1978 agreement with respect to proportionate reduction also "implies" that proportionate reduction should apply. Relying in part on our decision in *EM Nominee,* Wadi contends that "silence" does not create ambiguity. Again, *EM Nominee* is distinguishable in this regard. *The authorities we have cited and relied upon emphasize that in an instance such as this, silence leaves open the question of proportionate reduction, whereas that line of reasoning was not applicable to the "silence" with which we were concerned in EM Nominee.* In addition, Wadi recites this passage from *40 North Corporation v. Morrell,* 964 P.2d 423, 426 (Wyo. 1998) to advance an argument that the relevant title documents "merged" so as to render them unambiguous:

40 North accepted a warranty deed to the property in exchange for a promissory note and mortgage. While the executory contract for sale stated that the resulting mortgage would have a subordination clause, the final agreement did not include such a clause. At the time of delivery and acceptance of the deed, the executory contract for sale merged into the deed, mortgage and promissory note. 40 North can only assert breach of contract against the Morrells based

upon the covenants in the deed, mortgage, and promissory note. Since there is no subordination clause in the mortgage, 40 North has no basis for asserting breach of contract.

*Comparing the circumstances of the 40 North case to those of the instant case, we are simply unable to see the applicability of the "merger" theory propounded by Wadi.*

[¶ 13] Finally, the court in *Wadi,* ¶¶ 16–18 (emphasis added), addressed the utilization of other documents by the district court in rendering its ruling concerning the intent of the parties:

Wadi contends that the only documents that may be considered are the assignments themselves and the 1978 agreement. Wadi contends that the district court could not consider a March 15, 1984 Division Order, which indicated that Wadi's predecessors in interest, Hondo, owned a .625% ORRI. Wadi contends that use of a division order in such a fashion is prohibited by Wyo. Stat. Ann. § 30–5–305(a) (LexisNexis 2001):

§ 30–5–305. Collection; reporting and remittance of royalties.

(a) Unless otherwise expressly provided for by specific language in an executed written agreement, "royalty", "overriding royalty", "other nonworking interests" and "working interests" shall be interpreted as defined in W.S. 30–5–304. A division order may not alter or amend the terms of an oil or gas lease or other contractual agreement. A division order that alters or amends the terms of an oil and gas lease or other contractual agreement is invalid to the extent of the alteration or amendment and the terms of the oil and gas lease or other contractual agreement shall take precedence.

*The flaw in this argument is that the division order was not used to "alter or amend" the terms of the assignments but only to assist the trial court in resolving the inherent ambiguity in the assignments.*

Finally, Wadi maintains that there are many other documents which were created both before and after the creation of the division order that indicate Wadi's ORRI should be 3.125% and, therefore, there is no need to look at the division order. We have carefully reviewed those documents, and we are convinced that they do nothing more than perpetuate the ambiguity, which originated in the disputed assignments.

[¶ 14] We find the reasoning expressed in *Wadi* detailed above to be dispositive in this case. Therefore, we conclude that the district court in this case was likewise correct, as a matter of law, in determining that the disputed assignments were ambiguous. Similarly, because the assignments were ambiguous, the district court properly examined extrinsic evidence including expert testimony in order to resolve the ambiguity. We further agree with the district court's evaluation of the evidence that produced the conclusion that appellants' interest was proportionately reduced to .625 percent.

### CONCLUSION

[¶ 15] Upon our review and analysis, we affirm the judgment the district court.