Jack SVALINA, Appellant (Defendant),

v.

SPLIT ROCK LAND AND CATTLE COMPANY, a Wyoming Partnership, Appellee (Plaintiff).

No. 91–48.

Supreme Court of Wyoming.

Aug. 28, 1991.

---

Georg Jensen of Law Offices of Georg Jensen, Cheyenne, for appellant.

Peter J. McNiff and Sherrill A. Veal of McNiff & Patton, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

Appellant Jack Svalina seeks review of a summary judgment which determined the lease and option-to-purchase agreement he entered into with Appellee Split Rock Land and Cattle Company was unambiguous and not unenforceable by reason of unconscionability.

We affirm.

Svalina presents these issues for our disposition:

1. Did the district court err in granting summary judgment on the complaint and counterclaim herein ruling that the contract between the parties was not ambiguous?

2. Did the district court err in determining that the contract was enforceable and denying the defendant's claims of unconscionability?

On December 16, 1988, Svalina and Split Rock Land and Cattle Company entered into a "Ranch Lease Agreement With Option to Purchase." As consideration for the agreement, Split Rock Land and Cattle Company paid $91,852.97 to Svalina ($81,-852.97 for a five-year lease of the property and $10,000 for the option to purchase). Svalina used this payment to retire a third mortgage on his land, which was in foreclosure, and to retire other debts. The agreement, warranty deed to the land owned by Svalina, assignments of state and federal leases held by Svalina, and escrow instructions were placed in an escrow file with the First State Bank of Wheatland.

The option-to-purchase portion of the agreement provided Split Rock Land and Cattle Company could exercise its option to purchase if Svalina defaulted in his obligations under the agreement. It also provided the purchase price to be paid by Split Rock Land and Cattle Company, if the option to purchase were exercised, would be the assumption of liability for the first and second mortgages on the property, with

Svalina retaining any sums Split Rock Land and Cattle Company had paid to him for any unexpired lease term. The agreement also provided Svalina with the right to repurchase the option to purchase upon giving notice to Split Rock Land and Cattle Company *and* upon tendering, within thirty days, the amount which Split Rock Land and Cattle Company had paid to Svalina for the lease and option to purchase, as well as any other sums Split Rock Land and Cattle Company had paid on behalf of Svalina during the lease term.

On December 26, 1989, Svalina gave notice to Split Rock Land and Cattle Company that he intended to exercise his right to repurchase the option. However, he did not tender the sum of money (approximately $100,000) which was required by the agreement. By a letter dated January 26, 1990, Split Rock Land and Cattle Company informed Svalina it would exercise its option to purchase because Svalina had defaulted in meeting his obligations.

On January 29, 1990, Svalina filed a petition for relief in the United States Bankruptcy Court for the District of Wyoming, thus precluding Split Rock Land and Cattle Company from taking any further action with regard to establishing its possessory and ownership interests in the Svalina property. Orders of the bankruptcy court dated May 17, 1990, released the Svalina land warranty deed to Split Rock Land and Cattle Company and lifted the automatic stay which had prevented Split Rock Land and Cattle Company from attempting to adjudicate its rights to the land in a state court.

Split Rock Land and Cattle Company initiated this case by filing a complaint for a preliminary and permanent injunction and for declaratory relief. On June 15, 1990, the parties stipulated to the entry of a preliminary injunction which permitted Split Rock Land and Cattle Company to exercise dominion over the Svalina land and allowed Svalina to remain on the land and to use it for certain limited purposes. Svalina answered the complaint on June 26, 1990, and on July 5, 1990, he filed a counterclaim. Split Rock Land and Cattle Com-

pany filed a motion for summary judgment and, by an order entered on January 7, 1991, the district court determined that (1) the agreement was clear and unambiguous; (2) Split Rock Land and Cattle Company exercised the option to purchase in sufficient compliance with the agreement to create an obligation by Svalina to convey the property to Split Rock Land and Cattle Company; (3) Svalina's affidavit filed in opposition to the motion for summary judgment contained opinions and violated the parol evidence rule and, potentially, the statute of frauds; and (4) Svalina's allegations of fraud were not pleaded with sufficient particularity and were conclusory in nature. As a result, the district court granted a summary judgment in favor of Split Rock Land and Cattle Company and ordered specific performance of the agreement.

Svalina asserts the district court erred in finding the contract was not ambiguous. To support this claim, Svalina points to his affidavit wherein he affirmed that he approached one of the partners in Split Rock Land and Cattle Company and that he proposed an agreement allowing Split Rock Land and Cattle Company to graze cattle on his ranch for five years. In exchange for those grazing rights, Svalina was to receive $100,000 and one-third of the calf crop. The agreement he signed, however, provided less cash for him than he had proposed. Svalina claimed that, when he signed the agreement, he did not realize he would not get one-third of the calf crop during the first year of the lease. Svalina also claimed he had an opportunity to sell his ranch at a profit in 1989, but he did not pursue it because he found out that, even if he repurchased and then sold the ranch, it would still be subject to the five-year lease. Svalina also claimed Split Rock Land and Cattle Company breached the agreement by failing to pay any compensation for the first year of the lease.

In addition, Svalina argues this case was not appropriate for summary judgment because of the complex and extensive factual questions involved, because terms of the agreement were in conflict, and because terms of the agreement were subject to

oral supplementation. The alleged ambiguities are that the agreement makes no provision for compensation to Svalina for the first year of the lease and that the agreement is not clear as to who will pay husbandry expenses prior to December 1989. Svalina also claims there are ambiguities in the portions of the agreement pertaining to the exercise of the option to purchase. Finally, Svalina contends the agreement results in a forfeiture or penalty and should not be enforced.

We approach this case by employing our well established principles for reviewing summary judgments. *Baros v. Wells,* 780 P.2d 341 (Wyo.1989).

■ In analyzing Svalina's contention that the agreement was ambiguous, we are guided by our precedent that, if an agreement is in writing and the language is clear and unambiguous, the intention of the parties is to be secured from the words of the agreement without resorting to extrinsic evidence. *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.,* 803 P.2d 366 (Wyo.1990). Rules of contract construction are utilized only when, without their aid, the meaning of a contract is doubtful or uncertain. *Kimball v. DeYoe,* 583 P.2d 1274 (Wyo.1978). An ambiguity justifying the use of extrinsic evidence is not generated by the subsequent disagreement of the parties concerning the contract's meaning. *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595 (Wyo.1989). Whether a contract is ambiguous is a question of law for the court. *Id.*

■ We agree with the district court that the agreement is not ambiguous. It is forthright in stating the duration of the lease is from December 1, 1988, until December 1, 1993, and

> the consideration for this lease is agreed to be the sum of Eighty–One Thousand Eight Hundred Fifty–Two Dollars and Ninety–Seven Cents ($81,852.97), and the consideration for the option to purchase is Ten Thousand Dollars ($10,000.00) * * *.

This sum was paid to Svalina at the time the agreement was executed. The agreement continues:

> As additional consideration the Lessors shall receive one-third (⅓) of the calf crop each year during the lease term commencing with the second year of the lease term from the one hundred fifty (150) cows owned by the Lessee and to be cared for on the premises by the Lessors as hereinafter provided.

One of Svalina's principal arguments is that the agreement fails to provide "compensation" to him for the first year of the lease. The agreement does not purport to provide any "compensation" to Svalina for any period of the lease. However, the *consideration* for the lease and option is clear.

■ Svalina claims the agreement is ambiguous as to who is to pay for veterinary and husbandry expenses for the first year of the lease. If this portion of the lease is not as clear as it might have been, it is clear from the record no disagreement existed between the parties. The agreement provides the veterinary and husbandry expenses, the death loss, and the calf crop are to be split one-third/two-thirds after December 1, 1989. For the entire duration of the lease, Split Rock Land and Cattle Company is responsible for providing salt and minerals, and Svalina is responsible for maintaining the cattle in accordance with good animal husbandry practices. In any event, to the extent there is any ambiguity, or more accurately "indefiniteness or incompleteness of expression," it simply has no relevance to this appeal.

The central issue in this case is that portion of the agreement which provided that, in the event of certain defaults by Svalina, Split Rock Land and Cattle Company could exercise its option to purchase. If the option were exercised, Split Rock Land and Cattle Company's only obligation to Svalina would be to assume responsibility for the first and second mortgages on the property. The agreement gives to Svalina a right to repurchase the option if he refunds the entire $91,852.97 which was paid to him as consideration for the lease and the option to purchase, plus any amounts advanced or actually paid by Split Rock Land and Cattle Company to meet Svalina's obligations during the term of the lease.

Even if Svalina effectuated a repurchase, the lease to Split Rock Land and Cattle Company would survive. The agreement also provided that, if Split Rock Land and Cattle Company never exercised its option to purchase during the lease term, Svalina would retain the total payments made by Split Rock Land and Cattle Company, the land, and Svalina's share of the calves for the last four years of the lease. The language in the agreement is not ambiguous. If Svalina has a remedy, it does not arise because of questions of ambiguity but arises because the contract is unconscionable or unenforceable.

■ The concept of "unconscionability" is difficult to define. It is " 'that which "affronts the sense of decency." ' " J. Calamari & J. Perillo, The Law of Contracts § 9–40 at 406 (3rd ed. 1987). This Court has applied a test which looks to see if the contract is oppressive or unfairly surprises one party. *Cline v. Safeco Insurance Companies,* 614 P.2d 1335 (Wyo.1980); *Fulkerson v. Reese,* 599 P.2d 550 (Wyo. 1979); J. Calamari & J. Perillo, *supra.* Our opinions enumerate some of the factors to be considered in the identification of unconscionability:

1. Was a party deprived of a meaningful choice as to whether to enter into the contract?

2. Was a party compelled to accept the terms of the contract?

3. Was there an opportunity for a meaningful negotiation?

4. Was there a great[1] inequality of bargaining power?

5. Was one party readily subject to deception?

6. Was one party in some manner surprised by fine print or concealed terms?

*Fulkerson,* 599 P.2d 550. *See generally* J. Calamari & J. Perillo, *supra* at Ch. 9, § G.

The analysis employed in *Fulkerson* is dispositive. Svalina had a meaningful choice of whether to enter into the agreement. There is nothing in the record to suggest that he was compelled to accept the terms of the agreement—no evidence he had exhausted more traditional forms of obtaining money such as banks, insurance companies, or other lenders—or that Split Rock Land and Cattle Company employed overreaching or some form of duress to obtain Svalina's signature on the agreement. There was an opportunity for a meaningful negotiation. In fact, Svalina initiated the negotiations by making a proposal to Split Rock Land and Cattle Company. Nothing in the record demonstrates there was a great disparity in bargaining power or Svalina was readily subject to deception. Split Rock Land and Cattle Company may have been the more sophisticated of the two bargainers, but no evidence exists to suggest Svalina is anything other than an experienced businessman. There is no fine print in the contract, nor are there any terms of the contract which are difficult to read or understand because of convoluted verbiage or lack of directness in wording. The option to purchase is very similar to that used in *Fulkerson,* where we also held unconscionability was not present. *See Hershey v. Simpson,* 111 Idaho 491, 725 P.2d 196 (Ct.App.1986); *Resource Management Company v. Weston Ranch and Livestock Company Inc.,* 706 P.2d 1028 (Utah 1985); and *Bekins Bar V Ranch v. Huth,* 664 P.2d 455 (Utah 1983). *See also* Annotation, *Construction and Effect of Options to Purchase at Specified Price and at Price Offered by Third Person, Included in Same Instrument,* 22 A.L.R.4th 1293 (1983).

Finally, Svalina presented no evidence to establish the proposition that the agreement's option-to-purchase provisions operated as a penalty or forfeiture. We hold the agreement was not unconscionable or otherwise unenforceable.

Affirmed.

---

**1.** In employing the term "great" instead of "gross," we do not intend to change in any way this particular element of the test. We employ "great" because the precise meaning of the term "gross" has seriously eroded in modern language usage.