**George P. WOLTER, Jr.; Margarite Wolter; Wolter Oil Company; The William L. Hershelman Trust; Ann M. Cunningham; Mary Ann Reinhardt; Jerry D. Busch; and Elizabeth M. Kessler, Appellants (Plaintiffs),**

v.

**EQUITABLE RESOURCES ENERGY COMPANY, WESTERN REGION, Appellee (Defendant).**

No. 98–299.

Supreme Court of Wyoming.

May 14, 1999.

William H. Everett and Kevin D. Huber of Williams, Porter, Day & Neville, P.C., Casper, Wyoming, for Appellants.

Neil J. Short, Casper, Wyoming, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellants George Wolter, Jr., Margarite Wolter, Wolter Oil Company, the William L. Hershelman Trust, Ann Cunningham, Mary Ann Reinhardt, Jerry Busch, and Elizabeth Kessler (hereinafter referred to as the royalty owners) appeal from the district court's order which granted a partial summary judgment in favor of Appellee Equitable Resources Energy Company, Western Region.

We affirm.

### ISSUES

The royalty owners present the following issues for our consideration:

A. Did the District Court err in not granting the Royalty Owners summary judgment on the issue of whether the Roy-

alty Owners should be paid their proportionate share of the proceeds of sales of production from the oil and gas lease in which they own overriding royalty interests on a "lease" basis, rather than a "unit" basis?

B. Did the District Court err in excluding evidence of the circumstances and usage at the time of the reservation of those overriding royalty interests in determining whether or not the language of the reservation was ambiguous, so as to truly determine the intent of the parties?

C. Did the District Court err in refusing to rule in the Royalty Owners' favor on their motions for judgment on the issue of conversion by the Company of the Royalty Owners' share of casinghead gas production from the oil and gas lease in which they own overriding royalty interests?

## FACTS

In 1970, Wyco, Inc. assigned its interest in two federal oil and gas leases to Diamond Shamrock Corporation and Texas Gas Exploration Corporation. George Wolter, Jr. was the president of Wyco at the time of the assignment, and he executed the assignment on its behalf. In the assignment, Wyco reserved an overriding royalty interest. The relevant part of the reservation language stated:

Said overriding royalty, which is reserved in this assignment, shall be computed and paid on the same basis, in the same manner, at the same time and on the same products, substances and elements, as is the royalty payable to the Lessor.

The lessor referred to in the reservation language is the United States government. The royalty owners are the owners of the overriding royalty.

Portions of the federal leases were included within the North Grieve Field, a producing oil and gas field in Natrona County. The North Grieve Field was unitized, but the royalty owners did not commit their interests to the unit.

Since July 1974, the federal government's royalty payments have been computed and paid in accordance with the terms of the unit agreement. The royalty owners, however, have been paid on the basis of the actual production from the leases rather than under the terms of the unit agreement. After January 1995, Equitable Resources—the operator of the North Grieve Field and unit— began depositing the overriding royalty payments into an escrow account.

The royalty owners filed an action in the Natrona County district court, seeking payment for the production that was attributable to their overriding royalty interests. The royalty owners maintained that Equitable Resources did not have the right to place the royalty payments which were due to them in an escrow account and that they were entitled to relief under Wyoming's royalty payment act, Wyo. Stat. Ann. §§ 30–5–301 to – 305 (Michie 1997). They also presented a claim for conversion because Equitable Resources had not accounted to them for the casinghead gas it produced.

Equitable Resources answered and filed two counterclaims. It sought a declaratory judgment on the meaning of the reservation language, claiming that the reservation language provided that the royalty owners were to be paid on the same basis as the lessor and that, because the federal government was paid in accordance with the unit agreement, the overriding royalty payments should also have been calculated with reference to the unit agreement. Equitable Resources also filed a counterclaim against the royalty owners, seeking repayment of more than a million dollars that it claimed the royalty owners had been overpaid. Equitable Resources maintained further that it did not convert the casinghead gas because it reinjected the gas into the formation to maintain reservoir pressure.

The parties filed several dispositive motions. After holding hearings on the motions, the district court issued a decision letter on August 13, 1996, and granted a partial summary judgment in favor of Equitable Resources on its declaratory judgment claim. It determined that the reservation language was clear and unambiguous and that the language mandated that the royalty owners be paid on the same basis as the lessor. The district court concluded, there-

fore, that, like the federal government, the royalty owners must be paid in accordance with the unit agreement. It also determined that Equitable Resources was not authorized to place the uncontested payments which were due to the royalty owners into an escrow account and granted relief to the royalty owners under Wyoming's royalty payment act. The district court found that genuine issues of material fact existed with regard to the remainder of the claims in the case and declined to grant a summary judgment on those issues.

The royalty owners filed a motion for reconsideration. The district court denied the motion and certified that the order granting a partial summary judgment was a final, appealable order under W.R.C.P. 54(b). The royalty owners subsequently perfected their appeal to the Wyoming Supreme Court.

### STANDARD OF REVIEW

■ A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Covington v. W.R. Grace–Conn., Inc.*, 952 P.2d 1105, 1106 (Wyo.1998); *see also* W.R.C.P. 56(c). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as the lower court employed and used. *Kirkwood v. CUNA Mutual Insurance Society*, 937 P.2d 206, 208 (Wyo.1997). We do not accord deference to the district court's decisions on issues of law. *Kanzler v. Renner*, 937 P.2d 1337, 1341 (Wyo.1997). In cases requiring the interpretation of a contract, a summary judgment is appropriate only if the contract is clear and unambiguous. *Kirkwood*, 937 P.2d at 208; *Treemont, Inc. v. Hawley*, 886 P.2d 589, 592 (Wyo.1994).

### DISCUSSION

#### A. Reservation Language

The royalty owners maintain that the district court erred by granting a summary judgment in favor of Equitable Resources. They claim that the reservation language was ambiguous and that the district court should have considered extrinsic evidence to determine the true intent of the contracting parties. Equitable Resources contends that the district court's decision was correct. We agree with Equitable Resources.

■ The reservation language at issue in this case was included in an assignment of an oil and gas lease. An assignment of an oil and gas lease is a contract. *See Moncrief v. Harvey*, 816 P.2d 97, 103 (Wyo.1991); *Farr v. Link*, 746 P.2d 431, 433 (Wyo.1987). We will, therefore, examine the reservation language in accordance with our general principles of contract interpretation. *Id.* Our prime focus in construing or interpreting a contract is to determine the parties' intent. *Woods Petroleum Corporation v. Hummel*, 784 P.2d 242, 243 (Wyo.1989). Our initial inquiry centers on whether the language of the contract is clear or ambiguous. *See Treemont, Inc.*, 886 P.2d at 592. Courts make that determination as a matter of law. *Svalina v. Split Rock Land and Cattle Company*, 816 P.2d 878, 881 (Wyo.1991). "An ambiguous contract is one which has language conveying a double or obscure meaning." *Treemont, Inc.*, 886 P.2d at 592.

■ When the contract language is clear and unambiguous, we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the document. *Treemont, Inc.*, 886 P.2d at 592; *Svalina*, 816 P.2d at 881. This Court looks at the plain meaning of the words employed in a clear and unambiguous contract to determine the parties' intent. *See Woods Petroleum Corporation*, 784 P.2d at 243–44. We turn to extrinsic evidence and rules of contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain. *Svalina*, 816 P.2d at 881. A disagreement between the parties as to the contract's meaning does not give rise to an ambiguity which justifies the use of extrinsic evidence. *Id.*

■ The royalty owners contend that the district court erred by refusing to consider extrinsic evidence of the circumstances surrounding the 1970 adoption of the reservation language. They insist that the district court could not determine the parties' true intent without resorting to such evidence. The roy-

alty owners claim that the extrinsic evidence showed that the purpose of the reservation language, which stated that the royalty owners were to be paid on the same basis as the federal government, was to prevent the operator from refusing to pay the royalty owners in an appropriate manner. They insist that, when the assignment was executed, many operators did not properly pay royalty owners.

Although the royalty owners' contention is interesting, we agree with the district court that the reservation language was clear and unambiguous and that the use of extrinsic evidence to determine the parties' intent was not justified. The reservation language specifically provided that the royalty owners were to be paid "on the same basis" as the lessor. This language can only be interpreted as meaning that, if the federal government was paid in accordance with a unit agreement, the unit agreement would also be used to calculate the overriding royalty payments.

The district court gave a well reasoned response to the royalty owners' lamentations that it could not ascertain the parties' intent without considering the circumstances surrounding the execution of the assignment.

> While there surely may be many after-the-fact thoughts and opinions of concern to the purposes, desires, and reasons for adopting the requirement that the overriding royalties be computed and paid on the "same basis" as the royalty payable to the lessor, such may not be given consideration in this situation since there is nothing about the subject contract that is obscure in its meaning[ ] because of indefiniteness of expression[ ] or because a double meaning is present.

■ The royalty owners also claim that we should examine extrinsic evidence for the limited purpose of determining whether the reservation language was clear or ambiguous. This Court has, however, refused in other cases to examine extrinsic evidence to determine whether or not the contract language was ambiguous.

> The ambiguity which justifies examining extrinsic evidence must exist ... in the language of the document itself. It cannot be found in subsequent events or conduct of the parties, matters which are extrinsic evidence. *The suggestion that one should examine extrinsic evidence to determine whether extrinsic evidence may be examined is circuitous.*

*State v. Pennzoil Company*, 752 P.2d 975, 978 (Wyo.1988) (citations omitted and emphasis added).

■ The royalty owners also maintain that there was a latent ambiguity in the contract which justifies the use of extrinsic evidence. They direct us to two cases which discuss the concept of latent ambiguity: *Yellowstone Sheep Co. v. Diamond Dot Live Stock Co.*, 43 Wyo. 15, 297 P. 1107 (1931) and *National Enterprises, Inc. v. First Western Financial Corporation*, No. 96–2168, 1997 WL 642081 (10th Cir.1997).[1]

In *Yellowstone Sheep Co.*, this Court examined an agreement providing for the sale of "old ewes." We stated that, although the language of the agreement was apparently clear, a latent ambiguity existed with regard to the identity of the sheep which were conveyed in the agreement. 297 P. at 1114. Because there was a latent ambiguity as to the subject matter of the contract, extrinsic evidence of the parties' negotiations was admissible to explain "what was really intended as the subject-matter of their bargain." 297 P. at 1115.

In *National Enterprises, Inc.*, the release language included in a settlement agreement was apparently clear on its face; however, the Tenth Circuit Court of Appeals recognized that there was a latent ambiguity as to whether or not the release language applied to a particular note. 1997 WL 642081, at 3. The court determined that the existence of a latent ambiguity concerning the subject mat-

---

1. We note that the *National Enterprises, Inc.* case is an unpublished Tenth Circuit Court of Appeals decision. The notice accompanying the decision states: "Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties."

ter of the contract made a summary judgment inappropriate. 1997 WL 642081, at 4.

The courts in *Yellowstone Sheep Co.* and *National Enterprises, Inc.* considered a very specific aspect of contract law. In those cases, the courts were presented with contracts that were apparently clear and unambiguous. Nevertheless, the courts discovered that there were latent ambiguities concerning the subject matters of the contracts. *Yellowstone Sheep Co.,* 297 P. at 1110–15; *National Enterprises, Inc.,* 1997 WL 642081, at 3.

The sole issue in the case at bar is the proper method of computing the payments which are due to the royalty owners. There is no question in this case about the identity of the subject matter of the assignment. We do not need to examine extrinsic evidence to determine the interest which was assigned or the interest which was reserved. The concept of latent ambiguity, therefore, is not applicable in this case.

 The royalty owners also maintain that we must give consideration to the parties' historical performance of the contract in order to determine the parties' intent. It is true that, when a court determines that the contract language is ambiguous, it may consider the parties' historical performance of the contract in order to determine their intent. *True Oil Company v. Sinclair Oil Corporation,* 771 P.2d 781, 792 (Wyo.1989); *Sunburst Exploration, Inc. v. Jensen,* 635 P.2d 822, 825 (Wyo.1981); *Holliday v. Templin,* 56 Wyo. 94, 103 P.2d 408, 413 (1940). We do not, however, look to extrinsic evidence of the parties' historical performance of a contract when the contract language is clear on its face. *See True Oil Company,* 771 P.2d at 790; *Sunburst Exploration, Inc.,* 635 P.2d at 823–24. The contract language in this case is clear, and we refuse, therefore, to consider the parties' performance of the contract to determine its meaning.

 We conclude that the district court did not err when it granted a summary judgment in favor of Equitable Resources on its declaratory judgment action.

**B. Conversion of Casinghead Gas**

The royalty owners requested that the district court grant a judgment on the pleadings on their claim that Equitable Resources had converted the casinghead gas. The district court treated their motion for a judgment on the pleadings as a summary judgment motion under W.R.C.P. 12(c) because the parties presented matters outside the pleadings. The district court subsequently denied the royalty owners' motion, stating that genuine issues of material fact existed on the conversion claim. The royalty owners contend, on appeal, that the district court erred by denying their summary judgment motion.

 A denial of a motion for a summary judgment generally is not an appealable, final order. *LVW v. J (Adoption of MSVW),* 965 P.2d 1158, 1161 (Wyo.1998). Although there are exceptions to this general rule, the district court's denial of the royalty owners' summary judgment motion does not fall within any of those exceptions. *See LVW,* 965 P.2d at 1161–62. Consequently, we refuse to rule on the propriety of the district court's decision.

Affirmed.