**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ROBIN L. HUTTON, individually and
d/b/a High Country Logging,

  Plaintiff-Appellant,

v.

DEERE & COMPANY, a Delaware
corporation; STEWART &
STEVENSON POWER, INC.,
a Delaware corporation; PRO PAC
INDUSTRIES, LTD., a Canadian
corporation,

  Defendants-Appellees.

No. 99-8053
(D.C. No. 98-CV-124)
(D. Wyo.)

ORDER AND JUDGMENT   *

Before **KELLY** , **HENRY** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Robin L. Hutton, individually and doing business as High Country Logging (Hutton), appeals the district court's summary judgment dismissal of his diversity suit against defendants Deere & Company (Deere), Stewart & Stevenson Power, Inc (S&S) and Pro Pac Industries, LTD (Pro Pac) claiming, under Wyoming law, negligence, strict product liability and breach of implied warranty of fitness for a particular purpose for the destruction by fire of a piece of forestry equipment owned by Hutton. The district court had jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, and we exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. Facts.

Hutton owns a commercial logging business operated in Sheridan, Wyoming. S&S is a Casper, Wyoming retail distributor of various lines of construction equipment, and is an authorized dealer of equipment manufactured by Deere. Early in 1995, Hutton expressed to S&S an interest in acquiring a delimber, which removes the limbs from felled trees and cuts the trees to certain log specifications. S&S representatives took Hutton to a logging site to view a delimber in operation. The particular delimber Hutton viewed was a Model PP-453 delimber, manufactured by Pro Pac, mounted onto a John Deere 690E LC

excavator. It is undisputed that all delimbers have to be mounted onto some motorized carrying equipment, such as the Deere excavator. *See* Appellant's App. at 75-76. The purpose of a Deere excavator is to dig dirt; thus, in order to convert the excavator into a delimber, the boom, arm and bucket of the excavator, which are used for digging, must first be removed and then a delimber is attached.

In April and May 1995, Hutton and S&S discussed the purchase of a Pro Pac delimber mounted on a Deere 690E LC excavator. S&S ordered a Deere 690E excavator from an S&S equipment division in Houston, Texas and ordered a Pro Pac 453 delimber from Pro Pac in Canada. The excavator was shipped from Houston to S&S in Casper, where S&S removed its boom and bucket. In its modified form, the Deere 690E is referred to as a "carrier." S&S then shipped the carrier to Pro Pac in Canada where Pro Pac attached its delimber to the Deere 690E carrier. In the course of installing its delimber unit onto a Deere carrier, Pro Pac substantially modifies the equipment by adding a catwalk, installing heavy duty guarding underneath the machine, modifying the tracks, adding cab protection, welding on a rock guard, and adding additional ventilation. Following this conversion, the machine, now referred to as a "delimber," was shipped by Pro Pack to S&S, arriving in Caspar on July 16, 1995.

On July 22, 1995, Hutton signed the purchase order for the delimber and took delivery of the equipment. The purchase order identified the equipment as a

"John Deere 690E carrier [a]ssem[bled] w[ith] Pro-Pac Model PP-453 delimber," and charged $260,935 for the single, integrated unit. The purchase order listed the standard express warranty, the available extended warranties, and disclaimers of implied warranties. Hutton insured the unit for $275,000.

On July 14, 1996, while delimbing trees in the Big Horn National Forest, the delimber caught and was destroyed by fire. The parties dispute the cause of the fire. Hutton alleges that the fire was caused by defective wiring in the carrier; Deere claims that the fire was caused by an improper installation of the Pro Pac delimber unit, allowing excessive debris to gather and catch fire. Following the fire, Hutton's $275,000 insurance claim was paid.

## II. Economic Loss Rule.

Wyoming has adopted the "economic loss rule" in products liability claims based on negligence and strict liability theories, which bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or damage to other property. *See Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234-35 (Wyo. 1996); *Continental Ins. v. Page Eng'g Co.*, 783 P.2d 641, 647 (Wyo. 1989). "The 'economic loss rule' is 'founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract.'" *Rissler*, 929

P.2d at 1235 (quoting *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F. Supp. 1549, 1557 (D.S.C. 1993)). Wyoming's economic loss rule is based on the Supreme Court's decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986), which held that, under admiralty law, a cause of action in tort does not lie "when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *Id*. at 859, 871. "[T]he law of contracts is far better suited to deal with the dissatisfaction on the part of a purchaser under such circumstances." *Continental Ins.*, 783 P.2d at 647.

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. See U.C.C. §§ 2-316, 2-719. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

*Id.* (quoting *East River*, 476 U.S. at 873) (further citation omitted).

In *East River*, the Supreme Court drew a distinction between damage caused to the "product itself" and damage to a "person or other property." *See* 476 U.S. at 870. When the product itself is damaged, the "resulting loss is purely economic" and losses such as "repair costs, decreased value, and lost profits . . .

essentially [involve] the failure of the purchaser to receive the benefit of its bargain--traditionally the core concern of contract law." *Id*.

Defendants moved for summary judgment based on Wyoming's economic loss rule, contending that Hutton's tort claims were barred because the only damage was to the delimber unit itself. Thus, it claimed it had no duty to Hutton under a negligence or strict liability claim. Hutton responded by claiming that the Pro Pac delimber attached to the Deere carrier constituted "other property." Because Hutton claimed the fire started in the Deere carrier portion of the equipment, it argued the fire in the carrier engine damaged "other property" when it burned and destroyed the attached Pro Pac delimber unit. The district court rejected Hutton's argument and granted Defendants' motion for summary judgment, ruling that the Pro Pac delimber did not constitute "other property" because the Pro Pac delimber and the Deere carrier "were effectively component parts of a single piece of equipment." Appellant's App. at 46.

The Supreme Court shed light on the *East River* "other property" issue in *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997). In *Saratoga*, a purchaser of a ship added a skiff, a fishing net, and spare parts before reselling it to Saratoga Fishing. A faulty hydraulic system caused an engine room fire which in turn caused the ship to sink. Saratoga sued the manufacturer of the hydraulic system and the company that built the vessel. At issue was whether,

under the economic loss rule, the added equipment was "other property." The Court distinguished between components incorporated by a manufacturer before sale to an "Initial User" and those items added by a "User" of the manufactured property, holding that the added skiff, fishing net and spare parts were "other property" because they were added by the Initial User after the product was placed in the stream of commerce:

> When a Manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the "product itself" under *East River* . Items added to the product by the Initial User are therefore "other property," and the Initial User's sale of the product to a Subsequent User does not change these characterizations.

*Id.* at 879.

The Court emphasized that it is not the various component parts, but the product itself as placed in the stream of commerce by the manufacturer and distributors that is the "product." *Id*. at 883 (citing *Shipco 2295, Inc. v. Avondale Shipyards, Inc.* , 825 F.2d 925, 928 (5th Cir. 1987)). As the Court had earlier emphasized in *East River* , "'[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.'" *Id*. at 883 (quoting *East River* , 476 U.S. at 867).

We agree with the district court that, under *Saratoga Fishing*, the product which Hutton bargained for, and the product which was placed in the stream of commerce by the manufacturers and the distributor, was the fully converted delimber machine. Hutton negotiated and purchased the equipment as a single item with a single price. The final sales quote, dated July 19, 1995, identifies the sale item as "One (1) New John Deere 690E Carrier . . . *assembled complete* with a Pro-Pac Model PP-453 Delimber." Appellee's Supp. App. at 17 (emphasis added).

The record also clearly demonstrates that S&S was the distributing dealer of the delimber machine, not an "Initial User," as Hutton argues. Acting solely as a dealer, S&S arranged for the conversion of the Deere excavator to a delimber for purposes of selling the modified equipment to Hutton. As soon as the modifications were completed and the machine was shipped from Pro Pac to S&S's dealership, S&S immediately sold the machine to Hutton as a fully converted package. Hutton then put the machine to use in the Wyoming's Big Horn National Forest. The district court correctly held that the Pro Pac delimber was not "other property," but was a component part of a single product. *See Saratoga Fishing Co.*, 520 U.S. at 879.

Because no "other property" of Hutton was damaged, the economic loss rule precludes recovery under Hutton's tort theories and, therefore, the District Court correctly dismissed Hutton's negligence and strict liability claims.

### III. Implied Warranty of Merchantability.

Hutton also claims the district court erred in holding that defendants effectively disclaimed Wyoming's implied warranty of merchantability. *See* Wyo. Stat. § 34.1-2-314. Under Wyoming law, a correctly executed and displayed exclusion of an implied warranty is enforceable, although disclaimers of warranty protections are not favored and are strictly construed. *See Stauffer Chem. Co. v. Curry*, 778 P.2d 1083, 1091 (Wyo. 1989). Wyoming law requires that language purporting to exclude or modify the implied warranty of merchantability must include the word "merchantability" and, in case of a writing, be conspicuous. *See id*. at 1091-92; Wyo. Stat. § 34.1-2-316. "If the disclaimer is in writing and is conspicuous, there is no requirement that the customer actually read or acknowledge the disclaimer in order for it to become a part of the bargain." *Stauffer*, 778 P.2d at 1092.

The parties agree that the disclaimer of warranty on the purchase order for the delimber contained the word "merchantability." Hutton contends, however, that the disclaimer was not conspicuous. The determination of whether a

-9-

warranty disclaimer is conspicuous is a question of law for the court. *See* Wyo. Stat. § 34.1-1-201(x). Section 34-1-201(x) defines "conspicuous" as follows:

> [A] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or contrasting type or color. . . .

*Id*.

We agree with the district court that the disclaimer of warranties here was sufficiently conspicuous and that a reasonable person would have noticed it. Hutton signed a two page "Customer Purchase Order for John Deere Industrial Products." The front page of the purchase order includes a paragraph heading of "IMPORTANT WARRANTY NOTICE." Appellee's Supp. App. at 15. The paragraph then tells the product purchaser that the express warranty for the product is printed on the back of the sheet. *See id*. The paragraph then states in boldface, capital letters, "YOUR RIGHTS AND REMEDIES PERTAINING TO THIS PURCHASE ARE LIMITED AS INDICATED ON BOTH SIDES OF THIS PURCHASE ORDER. WHERE PERMITTED BY LAW, NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS IS MADE." *Id*. Then, directly above the customer signature line appears the statement: "I (We) understand that my (our) rights in connection with this purchase are limited as set forth on both sides of this Purchase Order." *Id*.

-10-

The back of the purchase order includes the following disclaimer, which appears under a heading in boldface, capital letters:

> **NO IMPLIED WARRANTY OR OTHER REPRESENTATION** . Where permitted by law, neither John Deere nor any company affiliated with it makes any warranties, representations or promises, express or implied, as to the quality, performance, or freedom from defect of its products, other than those set forth on this page, and **NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS IS MADE** .

*Id*. at 16.

Under the statutory definition, this disclaimer is conspicuous. The heading and disclaimers are printed all in capital letters and in boldface type. "A contract's warranty disclaimer satisfies the conspicuous requirement when it is printed in all capital letters . . . or when it is in a larger and boldface type." *Stevenson v. TRW Inc.* , 987 F.2d 288, 296 (5th Cir. 1993) (collecting cases); *Quality Acceptance Corp. v. Million & Albers, Inc.* , 367 F. Supp. 771, 773-74 (D. Wyo. 1973) (finding disclaimer conspicuous where it was all capitalized and appeared above the signature line). Although similar attention-calling language appears in other provisions of the purchase order, the disclaimer is easily located and read, and we therefore hold that it is conspicuous.

## IV.  Unconscionability.

Finally, Hutton claims that giving effect to the implied warranty disclaimer in this case would be unconscionable, and thus should not be enforced. The

Wyoming Supreme Court has enunciated several factors to be considered in determining whether a contract is unconscionable:

> (1) Was a party deprived of a meaningful choice as to whether to enter into the contract? (2) Was a party compelled to accept the terms of the contract? (3) Was there an opportunity for a meaningful negotiation? (4) Was there a great inequality of bargaining power? (5) Was one party readily subject to deception? [and,] (6) Was one party in some manner surprised by fine print or concealed terms?

*Svalina v. Split Rock Land & Cattle Co.*, 816 P.2d 878, 882 (Wyo. 1991).

We agree with the district court that, applying the Wyoming law of unconscionability in contracting, *see id*., this disclaimer of implied warranties was not unconscionable. There are no facts which indicate Hutton was deprived of a meaningful choice as to whether to enter into the contract, that he was compelled to accept the terms of the contract, that there was a great inequality of bargaining power, or that Hutton was readily subject to deception. Hutton had a full opportunity to select the equipment and review the purchase order documents, and, thus, had an opportunity to meaningfully negotiate its terms.

Accordingly, the judgment of the United States District Court for the

District of Wyoming is AFFIRMED.


                                        Entered for the Court


                                        Paul J. Kelly, Jr.
                                        Circuit Judge