Dorman FOLLOWWILL, et al., Plaintiff(s),

v.

**MERIT ENERGY COMPANY, et al., Defendant(s).**

No. 03–CV–062–D.

United States District Court, D. Wyoming.

May 13, 2005.

Carolyn J. Mitchell, Dennis N. Carnes, Gretchen Kuhn, Kip A. Anderson, Kuhn Carnes & Anderson, Denver, CO, for Plaintiffs.

Brian Joseph Hanify, Dray Thomson & Dyekman, John A. Sundahl, Sundahl Powers Kapp & Martin, Cheyenne, WY, Craig R. Carver, Carver Kirchhoff Schwarz McNab & Bailey, Denver, CO, Richard E. Day, Scott P. Klosterman, Williams Porter Day & Neville, Casper, WY, for Defendants.

### ORDER ON DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' WYOMING STATE LAW CLAIMS

DOWNES, District Judge.

This matter comes before the Court on the Defendants' Joint Motion for Partial Summary Judgment on Plaintiffs' Wyoming State Law Claims. The Court, having carefully considered the briefs and materials submitted in support of the motion and Plaintiffs' response thereto, having heard oral argument of counsel, and being otherwise fully advised, FINDS and ORDERS as follows:

### BACKGROUND

All Plaintiffs, who are citizens of Colorado, own overriding royalty interests

(ORRI) carved out of federal oil and gas leases covering lands located in various counties in Wyoming Plaintiffs bring this action against Defendants for alleged violations of the Wyoming Royalty Payment Act (WRPA) and common law. Specifically, Plaintiffs assert the following claims for relief: (1) unjust enrichment resulting from Defendants failure to pay the proper ORRI amount due them in accordance with the provisions of WRPA; (2) an accounting of all the production, sales of production, production revenues, and appropriate expenses deductible and deducted from and allocable to their ORRI payments; (3) breach of duty to pay Plaintiffs their share of the production revenues; (4) breach of the implied covenant of good faith and fair dealing; (5) injury to property rights; (6) all statutory remedies provided for violation of WRPA; (7) failure to properly report production, sales, and deduction information as required by WRPA; (8) preliminary and permanent injunction restraining Defendants from failing to pay Plaintiffs the amount due them from the production revenues; (9) refusing to give Plaintiff information about the wells and production revenues as required by WRPA; and (10) punitive damages.

All of the Plaintiffs' ORRI are derived from leases issued by the United States Department of the Interior, Bureau of Land Management (BLM) and are located on federal land in Wyoming. The BLM form mineral leases all contain the following language:

> This oil and gas lease is issued ... subject to the provisions of the Mineral Leasing Act and subject to all rules and regulations of the Secretary of Interior now or hereafter in force, when not inconsistent with any express and specific provisions herein, which are made a part hereof.

The leases also contain language that the United States, as lessor, is to be paid a "12½% royalty on the production removed or sold from the leased lands computed in accordance with the Oil and Gas Operating Regulations (30 CFR Pt. 221)." Defendants' payments of royalties due to the United States under the federal leases are comprehensively regulated by the federal government pursuant to the Mineral Leasing Act, the Federal Oil and Gas Royalty Management Act, 30 U.S.C. §§ 1701 et seq., the Royalty Simplification and Fairness Act, 30 U.S.C. § 1735, and implementing regulations of the United States Department of the Interior, Minerals Management Service (MMS).

Plaintiffs Dorman Followwill and C. Dennis Irwin, Jr. acquired their interests in these leases as a result of an agreement dated February 9, 1973, with C & K Petroleum Inc. Pursuant to the terms of the agreement, Followwill and Irwin agreed to provide exploratory geologic services and C & K Petroleum agreed to provide certain cash compensation and, in addition, "to assign to Followwill and Irwin overriding royalties under the following terms and provisions: With respect to all leases acquired hereunder by C & K ... within a period of five (5) years from the date of completion by Followwill and Irwin of their services hereunder, ... C & K will assign to Followwill and Irwin jointly in equal shares an overriding royalty equal to one and one-half (1½%) per cent of 8/8ths of all the oil and gas produced, saved and marketed under the terms of such leases ...." The agreement further stated, "Said overriding royalties are to be computed and paid in the same manner as the corresponding lessor's royalty."

The subsequent Assignments of Overriding Royalty to Plaintiffs Followwill and Irwin, recorded August 11, 1976 and December 13, 1976, assign "an overriding royalty equal to 1½% of all the oil, gas, casinghead gas, and other hydrocarbon

substances which may be produced, saved and sold *under the terms of that certain oil and gas lease listed above ....*" (Emphasis added.) The Assignments further state that "the obligation to pay any overriding royalties or payments out of production of oil created herein, which, when added to overriding royalties or payments out of production previously created and to the royalty payable to the United States, aggregate in excess of 17½%, shall be suspended when the average production of oil per well per day averaged on the monthly basis is 15 barrels or less."

The remaining Plaintiffs ORRI were reserved or created when the subject federal leases were assigned to another party, at which time the assignor (each Plaintiff) retained an ORRI as partial consideration for the lease assignment.[1] By this process, the assigned leases ultimately reached the Defendants. The assignments were made using a standard BLM assignment form which includes a section where the assignor can specify what ORRI he or she is reserving. That section refers the assignor to Item 4 of the General Instructions which provides:

> *Overriding royalties or payments out of production*—Describe in an accompanying statement any overriding royalties or payments out of production created by assignment but not set out therein. If payments out of production are reserved by assignor, outline in detail the amount, method of payment, and other pertinent terms.

None of the Plaintiffs/assignors specified any other terms regarding the method of calculating their ORRI which would be different from the method of valuation for the lessor's royalty as set forth in the federal leases. Moreover, the BLM assignment forms contain the exact same language establishing a 5% cap on overriding royalties as that contained in the

Assignments to Plaintiffs Followwill and Irwin.

Most of Plaintiffs' claims hinge upon the applicability of WRPA to their overriding royalty interests in the federal leases. Defendants' motion seeks summary judgment as to Plaintiffs' WRPA claims and all claims dependent upon WRPA. Defendants contend that Plaintiffs' state-law claims which rely on WRPA fail for several reasons. First, Defendants argue that WRPA has no application to this case because the parties have, by specific language in written executed agreements, made explicit reference to federal procedures and methods of royalty computation. Second, Defendants argue that the Wyoming legislature did not intend that the provisions of the WRPA apply to a situation such as that presented by the facts of this case. Finally, Defendants argue that Plaintiffs' WRPA claims are preempted by the comprehensive federal royalty scheme.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in

---

1. Each of the assignments at issue was executed in 1976 or earlier.

favor of the nonmovant." *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997).

The trial court must determine which facts are material as a matter of law. And, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 272, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

In Wyoming, royalties and overriding royalties are to be computed in accordance with WRPA, "[u]nless otherwise expressly provided for by specific language in an executed written agreement." WYO. STAT. § 30–5–305(a). Defendants contend that the plain language of the leases and assignments at issue in this case establish federal regulations as the basis on which to determine the value of production used to calculate the various royalties to be paid out of production, thereby negating application of WRPA.

 "An assignment of an oil and gas lease is a contract." *Wolter v. Equitable Resources Energy Co.,* 979 P.2d 948, 951 (Wyo.1999). Therefore, the Court will examine the reservation language in accordance with the general principles of contract interpretation. *Id.* Likewise, the assignment of an overriding royalty is also a contract subject to the general principles of contract interpretation. The "prime focus" of the Court in interpreting a contract is to determine the parties' intent. *Id.*

[The Court's] initial inquiry centers on whether the language of the contract is clear or ambiguous. Courts make that determination as a matter of law. An ambiguous contract is one which has language conveying a double or obscure meaning.

When the contract language is clear and unambiguous, we secure the parties' intent from the words of the agreement as they are expressed within the four corners of the document. [The Wyoming Supreme Court] looks at the plain meaning of the words employed in a clear and unambiguous contract to determine the parties' intent. We turn to extrinsic evidence and rules of contract construction only when the contract language is ambiguous and its meaning is doubtful or uncertain.

*Id.* (internal quotations and citations omitted). It is also appropriate to construe the language of a contract "within the context in which it was written, and the court may look to the surrounding circumstances, the subject matter, and the purpose of the contract to ascertain the intent of the parties at the time the agreement was made." *Wadi Petroleum, Inc. v. Ultra Resources, Inc.,* 65 P.3d 703, 708 (Wyo.2003). "[I]f the meaning of a contract is ambiguous or not apparent, it may be necessary to use evidence in addition to the contract itself in order to determine the intention of the parties. In such instances, interpretation of the contract becomes a mixed question of law and fact." *Id.*

Because the assignments at issue do not specifically state that the overriding royalties are to be computed and paid in the same manner as the corresponding federal lessor's royalty, the Court finds the assignments ambiguous on that point. However, WRPA does not require that the specific language necessary to avoid WRPA applicability be in the assignment itself.

Therefore, it is appropriate for the Court to consider evidence in addition to the assignments in order to determine the intention of the parties.

■ In the case of Plaintiffs Followwill and Irwin, they expressly agreed that any overriding royalties they received would be computed and paid in the same manner as the federal lessor's royalty. Citing *40 North Corp. v. Morrell*, 964 P.2d 423 (Wyo. 1998), Plaintiffs argue that this unrecorded agreement predating the ultimate assignments is negated by the doctrine of merger and superseded by the language of the recorded assignments creating the ORRI. The Court disagrees. In *40 North Corp.*, the Wyoming Supreme Court held that "delivery of a mortgage, promissory note, and warranty deed merges the prior executory contract for sale into the current agreement." *Id.* at 426. In later cases, however, the Wyoming Supreme Court has found the doctrine of "merger" as applied in *40 North Corp.* inapplicable to cases where the court is interpreting ambiguous language used in an assignment of an oil and gas lease. *See Wadi Petroleum, Inc. v. Ultra Resources, Inc.*, 65 P.3d 703, 710 (Wyo.2003); *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Prod. Co.*, 78 P.3d 679, 684–85 (Wyo.2003). This Court likewise finds the "merger" theory inapplicable to the circumstances presented here.

■ In the case of the remaining Plaintiffs, the Court concedes that the absence of an agreement like that entered into by Followwill and Irwin makes the analysis more problematic. But, it is more plausible in the eyes of the Court to apply the same reasoning in determining the parties' intent. There is simply no evidence that the parties' intent was anything other than the use of federal regulations to value the various royalties to be paid on production.

The original federal leases expressly state that the lessor's royalty on produc-

tion removed or sold from the leased lands shall be computed in accordance with federal regulations. The subsequent assignments at issue reserve an overriding royalty of the lessee's interest in the federal lease. Historically, an important aspect of an "overriding royalty" (whether reserved by the lessor in a lease or created by a subsequent instrument executed by the lessee or the lessee's successor) is that it is a "royalty," that is, "in the absence of an express agreement to the contrary it is free of costs of which the lessor's royalty is free and it is subject to the costs to which the lessor's royalty is subject." WILLIAMS & MEYERS, MANUAL OF OIL & GAS TERMS at 768 (1994). WRPA did not exist at the time of these assignments, so the parties could not have intended that the definitions contained in WRPA would apply to the ORRI being reserved. In light of the historical understanding of an overriding royalty, and the absence of an express agreement to the contrary (which is specifically contemplated by General Instruction number 4 on the BLM assignment form), the parties intended that any overriding royalty would be computed and paid in the same manner as the federal lessor's royalty. A further indicator of this intent is that each of the assignments at issue specifically refer to a limit on overriding royalties or payments out of production when aggregated with the royalty payable to the United States, as did the assignments to Plaintiffs Followwill and Irwin.

When considering all of the evidence, it is clear to the Court that the parties' intent at the time the assignments were made was to compute any ORRI in the same manner as the federal lessor's interest. The federal oil and gas leases, from which Plaintiffs' ORRI inextricably derive, contain specific language expressly providing for the computation of overriding royalties in accordance with federal regulations. Accordingly, WRPA is inapplicable

when determining whether Defendants correctly calculated the value of Plaintiffs' ORRI. All of Plaintiffs' claims based upon a calculation of their ORRI in accordance with WRPA must be dismissed.[2] THEREFORE, it is hereby

ORDERED that the Defendants' Joint Motion for Partial Summary Judgment on Plaintiffs' Wyoming State–Law Claims (Docket # 80) is **GRANTED**. Plaintiffs' First, Second, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief are **DISMISSED.**[3]

---

**2.** Plaintiffs' complaint fails to allege a violation of the reporting requirements of WRPA that is separate and distinct from the alleged improper ORRI calculation. Therefore, those claims must also be dismissed.

**3.** The Court will reserve judgment on whether federal law governs Plaintiffs' remaining claims.